1  PROSKAUER ROSE LLP
   Myron D. Rumeld (*pro hac vice*)
2  Eleven Times Square
   New York, NY. 10036
3  Telephone: (212) 969-3021
   Facsimile: (212) 969-2900
4
   PROSKAUER ROSE LLP
5  Howard Shapiro (*pro hac vice*)
   Stacey C.S. Cerrone (*pro hac vice*)
6  Tulio D. Chirinos (*pro hac vice*)
   Proskauer Rose LLP
7  650 Poydras Street, Suite 1800
   New Orleans, LA 70130-6146
8  Telephone: (504) 310-4088
   Facsimile: (504) 310-2022
9
   *Attorneys for Defendants (Other Counsel listed on signature page)*
10

11              **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                    **OAKLAND DIVISION**

14  | CHRISTOPHER W. SEVERSON; individually as a participant in the SCHWAB PLAN RETIREMENT | Case No.: 4:17-cv-00285-CW |

15  SAVINGS AND INVESTMENT PLAN and on behalf of a class of all those similarly situated,   **DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY CLAIMS**

16

17                              Plaintiff,

18              v.

19  THE CHARLES SCHWAB CORPORATION;      Hearing Date:   July 25, 2017
    CHARLES SCHWAB & CO INC.; SCHWAB     Time:           2:30 p.m.
20  RETIREMENT PLAN SERVICES INC.;       Judge:          Hon. Claudia Wilken
    CHARLES SCHWAB BANK; CHARLES         Courtroom:      2, 4th Floor
21  SCHWAB INVESTMENT MANAGEMENT,
    INC.; JOHN DOES 1-50; and XYZ        Complaint Filed: January 19, 2017
22  CORPORATIONS 1-5,                    Trial Date:      None set

23                              Defendants.

24

25

26

27

28

1

## <u>NOTICE OF MOTION</u>

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

    PLEASE TAKE NOTICE THAT the following motion will be heard at 2:30 p.m. on Tuesday

4

July 25, 2017, or as soon thereafter as the matter may be heard, in Courtroom 2 of this Court, located

5

at 1301 Clay Street, Oakland, California 94612 before the Honorable Claudia Wilken.

6

    Defendants move pursuant to 9 U.S.C. §§ 3 and 4 for an Order compelling individual

7

arbitration of Plaintiff's claims against Defendants and dismissing this action, or in the alternative

8

staying this action pending such arbitration.  This Motion is based on this Notice, the Memorandum

9

of Points and Authorities, the concurrently filed Declaration of Holly Morgan and supporting

10

exhibits, the pleadings in this action, and such other materials and evidence as may be presented to

11

the Court.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY
CLAIMS

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3  I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 1

4  II.  STATEMENT OF FACTS ............................................................................................... 2

5  III.  ARGUMENT ................................................................................................................... 6

6     A.   The Federal Arbitration Act Requires Arbitration of Severson's Claims................. 6

7     B.   The Court Should Rule that Only Individual Claims May be Arbitrated
          Because the Applicable Arbitration Clauses Evince No Intention to Arbitrate
8         Class or Representative Claims .............................................................................. 11

9         1.   The Arbitration Provisions of the Plan Document and Severance
               Agreement Permit Only Individual Claims to be Asserted in
10             Arbitration ...................................................................................................... 11

11        2.   Limiting Severson to Individual Claims in Arbitration Is Consistent
               With ERISA's Civil Enforcement Provisions ................................................. 13

12

13        3.   The Court is Not Precluded by the NLRA from Ordering Severson to
               Arbitrate His ERISA Claims on an Individual Basis ..................................... 16

14    C.   The Matter Should be Dismissed for Improper Venue or, in the Alternative,
          Stayed While Arbitration Proceeds ....................................................................... 17

15

16  CONCLUSION ....................................................................................................................... 18

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY
CLAIMS

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*AlixPartners, LLP v. Brewington*,
  836 F.3d 543 (6th Cir. 2016) ...................................................................................11

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013)..................................................................................12, 14, 15

*Amalgamated Clothing & Textile Workers Union v. Murdock*,
  861 F.2d 1406 (9th Cir. 1988) ...................................................................................15

*Amaro v. Continental Can Co.*,
  724 F.2d 747 (9th Cir. 1984) .......................................................................................9

*Americopters, LLC v. Fed. Aviation Admin.*,
  441 F.3d 726 (9th Cir. 2006) .......................................................................................2

*Argueta v. Banco Mexicano, S.A.*,
  87 F.3d 320 (9th Cir. 1996) .......................................................................................18

*Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*,
  847 F.2d 475 (8th Cir. 1988) .......................................................................................9

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..............................................................................................11, 12

*Bird v. Shearson Lehman/American Express*,
  926 F.2d 116 (2nd Cir. 1991)......................................................................................8

*Bowles v. Reade*,
  198 F.3d 752 (9th Cir. 1999) .....................................................................................10

*Cape Flattery Ltd. v. Titan Mar., LLC*,
  647 F.3d 914 (9th Cir. 2011) .....................................................................................18

*Carr v. First Nationwide Bank*,
  816 F. Supp. 1476 (N.D. Cal. 1993) ............................................................................7

*Carr v. Int'l Game Tech.*,
  No. 3:09-CV-00584-ECR, 2012 WL 909437 (D. Nev. Mar. 16, 2012), *on reconsideration*, No. 3:09-CV-00584-RCJ, 2013 WL 638834 (D. Nev. Feb. 20, 2013) ...........................................................................................................................15

*Cilluffo v. Cent. Refrigerated Servs., Inc.*,
  No. EDCV 12-00886-VAP(OPx), 2012 WL 8523507 (C.D. Cal. Sept. 24, 2012) ......12

*Citigroup Tech., Inc. v. NLRB*,
  No. 15-60856, 2016 WL 7174107 (5th Cir. Dec. 8, 2016)............................................16

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006) ......................................................9, 10, 13, 15

*CompuCredit Corp. v. Greenwood*,
  565 U.S. 95 (2012)..................................................................................7, 8

*Cryer v. Franklin Templeton Res., Inc.*,
  No.4:16-cv-04265, No. C 16-4265 CW, 2017 WL 818788 (N.D. Cal. Jan. 17,
  2017) (N.D. Cal. Jan. 17, 2017) (Wilken, J.) ..........................................................10

*Dell Webb Cmtys., Inc. v. Carlson*,
  817 F.3d 867 (4th Cir. 2016), *cert. denied by* 137 S. Ct. 567 (2016) ........................11

*Di Ferdinando v. Intrexon Corp.*,
  No. 16-cv-01826-BTM-JMA, 2016 U.S. Dist. LEXIS 163674 (S.D. Cal. Nov. 28,
  2016) ....................................................................................................7

*DIRECTV, Inc. v. Imburgia*,
  136 S. Ct. 463, 471 (2015), *on remand to* 2016 WL 2609764 (Cal. Ct. App. May
  4, 2016) ................................................................................................12

*Fabian Fin. Servs. v. Kurt H. Volk, Inc. Profit Sharing Plan*,
  768 F. Supp. 728 (C.D. Cal. 1991) ....................................................................8, 9

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)......................................................................................14, 15

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000)........................................................................................7

*GT Secs., Inc. v. Klastech GmbH*,
  No. C-13-03090 JCS, 2014 WL 2928013 (N.D. Cal. June 27, 2014) ...........................2

*In re Bellsouth Corp., ERISA Litig.*,
  No. 1:02–CV– 2440–JOF, 2005 U.S. Dist. LEXIS 46823 (N.D. Ga. Sept. 30,
  2005) ....................................................................................................15

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009)............................................................................13

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014) ........................................................................17

*Jones v. Deutsche Bank AG*,
  No. C 04-05357 JW, 2007 WL 1456041 (N.D. Cal. May 17, 2007)............................18

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY
CLAIMS

*JP Morgan Chase Bank, N.A. v. Jones*,
    No. C15-1176RAJ, 2016 WL 1182153 (W.D. Wash. Mar. 28, 2016), *appeal filed,*
    No, 16-35313 .................................................................................................................11, 13

*Kairy v. Supershuttle Int'l, Inc.*,
    No. C 08-02993 JSW, 2012 WL 4343220 (N.D. Cal. Sep. 20, 2012)...........................12

*Kilgore v. KeyBank, Nat'l Ass'n*,
    718 F.3d 1052 (9th Cir. 2013) (en banc) ....................................................................12

*Kramer v. Smith Barney*,
    80 F.3d 1080 (5th Cir. 1996) ........................................................................................9

*Landwehr v. DuPree*,
    72 F.3d 726 (9th Cir. 1995) ...................................................................................10, 13

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) ......................................................................................15

*LaRue v. DeWolff, Boberg & Assocs. Inc.*,
    552 U.S. 248 (2008)......................................................................................................13

*Lewis v. Epic Sys. Corp.*,
    823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017) ...........................16

*Lewis v. UBS Fin. Servs.*,
    818 F. Supp. 2d 1161 (N.D. Cal. 2011) ......................................................................12

*Luna v. Kemira Specialty, Inc.*,
    575 F. Supp. 2d 1166 (C.D. Cal. 2008) .................................................................17, 18

*McCarthy v. Brennan*,
    No. 15-cv-03308-JSC, 2017 WL 386346 (N.D. Cal. Jan. 27, 2017).............................2

*McElrath v. Uber Techs., Inc.*,
    No. 16-cv-07241-JSC, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017)..........................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..................................................................................................7, 14

*Mohamed v. Uber Techs., Inc.*,
    836 F.3d 1102 (9th Cir. 2016), *amended and superseded on denial of reh'g en
    banc by* 848 F.3d 1201 (9th Cir. 2016)...................................................................12, 17

*Morris v. Ernst & Young, LLP*,
    834 F.3d 975 (9th Cir. 2016) (Ikuta, J., dissenting), *cert. granted*, 137 S. Ct. 809
    (2017)......................................................................................................................8, 16, 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).........................................................................................................7

*Munro v. Univ. of S. Cal.*,
    No. 2:16-cv-06191, ECF No. 55 (C.D. Cal. Mar. 23, 2017) ....................................10, 18

*Murphy Oil USA, Inc. v. NLRB*,
    808 F.3d 1013 (5th Cir. 2015), *cert. granted,* 137 S. Ct. 809 (2017) ...........................16

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ......................................................................................12

*NLRB v. Health Care & Ret. Corp. of Am.*,
    511 U.S. 571 (1994)......................................................................................................17

*Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*,
    No. 06CV0921, 2006 U.S. Dist. LEXIS 81767 (S.D. Cal. Nov. 7, 2006)......................9

*Opalinski v. Robert Half Int'l, Inc.*,
    761 F.3d 326 (3d Cir. 2014)..........................................................................................11

*Patterson v. Raymours Furniture Co., Inc.*,
    659 F. App'x 40 (2d Cir. 2016), *petition for cert. docketed* (Sept. 26, 2016) .............16

*Pratt v. Petroleum Prod. Mgmt. Inc. Emp. Sav. Plan & Trust*,
    920 F.2d 651 (10th Cir. 1990) ........................................................................................7

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    7 F.3d 1110 (3d Cir. 1993)..........................................................................................8, 9

*Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*,
    734 F.3d 594 (6th Cir. 2013), *cert. denied by* 134 S. Ct. 2291 (2014) .........................11

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
    490 U.S. 477 (1989)......................................................................................................15

*Sanzone-Ortiz v. Aetna Health of Cal.*,
    Inc., No. 15-cv-03334-WHO, 2015 WL 9303993 (N.D. Cal. Dec. 22, 2015)............8, 9

*Shearson/American Express Inc. v. McMahon*,
    482 U.S. 220 (1987)................................................................................................14, 15

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ..........................................................................................7

*Sparling v. Hoffman Constr. Co.*,
    864 F.2d 635, 638 (9th Cir. 1988) ................................................................................17

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..........................................................................................1, 11, 12

*Williams v. Imhoff*,
    203 F.3d 758 (10th Cir. 2000) ........................................................................................9

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY CLAIMS

1

**STATUTES**

2

FAA 9 U.S.C. § 2 ..............................................................................................6

3

FAA 9 U.S.C. § 3 ............................................................................................18

4

FAA 9 U.S.C. § 16(a)(1)(B)-(a)(3) .................................................................18

5

NLRA 29 U.S.C. § 152(2) ...............................................................................17

6

NLRA 29 U.S.C. § 152(11) .............................................................................17

7

NLRA  § 8, 29 U.S.C. § 158(a)(1) ...................................................................16

8

ERISA § 2(b), 29 U.S.C. § 1001(b) ..................................................................9

9

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ........................................... passim

10

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .....................................................6

11

ERISA § 510, 29 U.S.C. § 1140 ........................................................................9

12

ERISA § 712, 29 U.S.C. § 1185(a) ...................................................................8

13

**RULES**

14

Fed. R. Civ. P. 12(b)(1) ...............................................................................1, 2

15

Fed. R. Civ. P. 12(b)(3) ..................................................................................18

16

Fed. R. Civ. P. 12(b)(6) ....................................................................................1

17

Fed. R. Civ. P. 12(c) .........................................................................................1

18

Fed. R. Civ. P. 12(h) .........................................................................................1

19

Cal. Code of Civ. P. § 1281.4 .........................................................................18

20

FINRA Rule 13204(a) .....................................................................................13

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY
CLAIMS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Like many other recently filed lawsuits, this putative class action lawsuit seeks recovery of monetary losses allegedly resulting from the selection of investment options in a 401(k) plan and fees associated therewith.  The Complaint alleges that it was a violation of various provisions of ERISA for a 401(k) plan sponsored by The Charles Schwab Corporation ("Schwab"), known as the SchwabPlan Retirement Savings and Investment Plan (the "Plan"), to allow the Plan's participants to invest in the same funds as do millions of other investors throughout the country, merely because Schwab affiliates manage some of these funds.  The Court need not even consider the viability of such implausible claims because, by virtue of arbitration agreements to which the plaintiff is bound, the Court lacks jurisdiction to hear them.[1]

Both the Plan document, to which the plaintiff, Christopher W. Severson ("Severson" or "Plaintiff"), became bound by virtue of his participation in the Plan, and a severance agreement that Severson signed in return for significant compensation contain broad arbitration provisions encompassing claims relating to the Plan, and directing that these claims be resolved with the American Arbitration Association ("AAA").  There can be no question that these arbitration provisions extend to the claims asserted here.  Furthermore, the Plan document explicitly waives participant rights to bring class or representative claims in arbitration.  The arbitration clause in the severance agreement is properly construed to bar class and representative claims as well, since the agreement evinces no intention to the contrary.  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).  The same is true for another arbitration clause contained in a Financial Industry Regulatory Authority ("FINRA") Form U-4 agreement signed by Severson when he commenced his employment with Schwab.[2]

---

[1]   If the litigation is not referred to arbitration, Defendants intend to present other grounds for dismissal in a subsequent motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), or in a motion for judgment on the pleadings pursuant to Rule 12(c).  *See* Fed. R. Civ. P. 12(h) (omitting Rule 12(b)(1) and Rule 12(b)(6) from the list of defenses that are waived for failure to assert in a responsive pleading or other motion under Rule 12); Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").

[2]   Defendants seek an order to compel arbitration under the Plan document and severance agreement, rather than the Form U-4 agreement, because they believe that the AAA is the more

1    Accordingly, Defendants seek an order (a) directing Severson to pursue individual claims for

2    relief in arbitration before the American Arbitration Association; and (b) dismissing the Complaint,

3    or staying all proceedings in this Court pending completion of arbitration.

4  **II.    STATEMENT OF FACTS**

5    Except where otherwise indicated, this statement of facts is based exclusively on the

6    allegations contained in the Complaint ("Complaint") (Dkt. 1).[3]

7  **Schwab**

8    The Charles Schwab Corporation (NYSE: SCHW) is a leading provider of financial services,

9    with more than 335 offices and 10.3 million active brokerage accounts, 1.5 million corporate

10   retirement plan participants, 1.1 million banking accounts, and $2.90 trillion in client assets as of

11   February 28, 2017.  Schwab News Release March 2017, *available* at

12   https://www.aboutschwab.com/images/uploads/inline/schw_feb_2017_release.pdf.  Through its

13   operating subsidiaries, the company provides a full range of wealth management, securities

14   brokerage, banking, money management, custody, and financial advisory services to individual

15   investors and independent investment advisors.  Its broker-dealer subsidiary, Charles Schwab & Co.,

16   Inc. (member SIPC, http://www.sipc.org), and affiliates offer a complete range of investment

17   services and products including: an extensive selection of mutual funds; financial planning and

18   investment advice; retirement plan and equity compensation plan services; referrals to independent

19   fee-based investment advisors; and custodial, operational and trading support for independent, fee-

20   based investment advisors through Schwab Advisor Services.  *Id*.  Its banking subsidiary, Charles

21   Schwab Bank (member FDIC and an Equal Housing Lender), provides banking and lending services

22   and products.  *Id*.

23   appropriate forum to arbitrate a dispute of this nature.  Nevertheless, Severson's execution of the
     Form U-4 agreement is relevant for purposes of construing the intention of the parties and the
24   enforceability of the arbitration clauses.

25   [3]    Motions to compel arbitration are treated as motions to dismiss for lack of jurisdiction brought
     pursuant to Rule 12(b)(1).  *See GT Secs., Inc. v. Klastech GmbH*, No. C-13-03090 JCS, 2014 WL
26   2928013, at *2-3, 17-18 n.4 (N.D. Cal. June 27, 2014).  A court adjudicating a jurisdictional motion
     is not limited to the complaint's allegations, and thus may consider other relevant evidence.  *See*
27   *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *McCarthy v.*
     *Brennan*, No. 15-cv-03308-JSC, 2017 WL 386346, at *3 n.3 (N.D. Cal. Jan. 27, 2017).

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY
CLAIMS

**The SchwabPlan Retirement Savings and Investment Plan**

The SchwabPlan Retirement Savings and Investment Plan (the "Plan") is a defined contribution, individual account plan sponsored by Schwab.  (Compl., ¶¶ 14, 16; Ex. 2 at 30.[4])  Eligible employees may elect to contribute a certain percentage of their qualified compensation into the Plan, and Schwab matches employee contributions up to a certain percentage.  (Compl*.,* ¶¶ 14-15; Ex. 1, §§ 4.2, 4.6.)  A participant's Plan benefits consist of the accumulated value of the participant's contributions and Schwab's matching, profit sharing and Employee Stock Ownership contributions, together with the earnings or losses based on changes in the value of investments selected by the participant.  (Compl., ¶ 14; Ex. 2 at 9-10, 19-20.)  Plan participants have the sole discretion to decide how to invest their own contributions in one or more investment options available under the Plan.  (Ex. 1, § 8.2.)  Matching contributions are invested in the same investment options and proportions as the participant's contributions are invested.  (Ex. 1, § 4.3(a).)

Schwab employees are eligible to participate in the Plan as of their hire date, and they can choose whether or not to participate or to discontinue participation at any time.  (Ex. 2 at 7.)  At the time Severson commenced employment, employees could join the Plan by completing an enrollment form.  (Morgan Decl., ¶ 10.)  All employees and Plan participants have access to the Summary Plan Description.  (Morgan Decl., ¶ 4.)  Among other things, the Summary Plan Description advises that the full terms of the Plan are contained in the Plan document, which is available upon request.  (Ex. 2 at 4.)

**The Plan's Arbitration Provision**

The Plan document contains an arbitration section clearly marked under the heading "Arbitration of Disputes."  (Ex. 1, §15.11.)  That section states that

> [a]ny claim, dispute or breach arising out of or in any way related to the Plan shall be settled by binding arbitration conducted in San Francisco, California (or such other major city that is nearest to the workplace of the Participant) . . . . (Ex. 1, §15.11(a).)

---

[4] All "Ex." citations refer to the exhibits appended to the accompanying Declaration of Holly Morgan ("Morgan Decl.").

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY CLAIMS

The arbitration must be conducted before the American Arbitration Association "pursuant to the Employment Dispute Resolution Rules of the AAA" (Ex. 1, §15.11(a)), with the costs of arbitration borne by Schwab.  (Ex. 1, §15.11(c).)

The arbitration section also requires participants to bring

> any dispute in arbitration on an individual basis only, and not on a class, collective or representative basis and must waive the right to commence, be a party to, or be an actual or putative class member of any class, collective or representative action arising out of or relating to the Plan, including, but not limited to, any claims related to the Plan ("class action waiver").  (Ex. 1, §15.11(d).)

In the event this class action waiver is found unenforceable, "any claim on a class, collective or representative basis shall be filed and adjudicated in a court of competent jurisdiction, and not in arbitration."  (Ex. 1, § 15.11(d).)

**Severson's Employment, Participation in the Plan, and Termination**

Severson was employed at Schwab's subsidiary Charles Schwab & Co., Inc. for over 22 years, until January 3, 2016.  (Morgan Decl., ¶ 7.)  His last position was as a Senior Specialist-Restricted Stock, which he held from 2005.  (Morgan Decl., ¶ 7.)  Severson, in his online LinkedIn profile, represented that in his position as Senior Specialist he "[s]upervised and provided ongoing training with a premier team of restricted stock specialists charged with sophisticated client service for the firm's highest net worth clients."  (Ex. 3 at 1.)

On March 15, 1993, shortly after commencing his employment with Schwab, Severson completed a Uniform Application for Securities Industry Registration or Transfer ("Form U-4"), as is required for all registered representatives under FINRA rules.  (Ex. 4)  By signing the application, Severson agreed to arbitrate any disputes in accordance with the FINRA rules.  (Ex. 4, at 4 ¶ 5.)

Severson joined the Plan by completing an enrollment form on September 27, 1994.  (Ex. 5.)  His contributions were thereafter made through payroll deductions.  (Ex. 5.)  Pursuant to the Plan terms, Schwab made matching contributions to Severson's 401(k) account, which, together with

1  other contributions made by Schwab,[5] generated an additional $268,639.13 in retirement savings in

2  the course of Severson's career at Schwab.  (Morgan Decl., ¶ 11.)

3  　　　　On November 19, 2015, Severson and Schwab entered into a severance agreement

4  terminating Severson's employment effective January 3, 2016.  (Ex. 7)  As consideration for

5  entering into the agreement, Severson received a payment of $91,175.68.  (Ex. 6 at 2.)  The

6  agreement by its terms confirmed that Severson had been advised to consult with an attorney before

7  signing it and provided Severson with 45 days to review and consider its terms.  (Ex. 7, ¶ 5.)  These

8  terms included a general release of claims and covenant not to sue,[6] as well as an arbitration

9  provision stating that "any dispute or breach arising out of or in any way related to [Severson's]

10  employment, separation of employment, or the interpretation or performance of this Agreement shall

11  be settled by arbitration before a single arbitrator . . . ."  (Ex. 7, ¶ 25.)  The arbitration provision also

12  required arbitration to take place before the American Arbitration Association pursuant to its "Rules

13  for the Resolution of Employment Disputes . . ." in a location "nearest to [Severson's] last place of

14  employment with Schwab . . . ," with the costs of arbitration to be borne by Schwab.  (Ex. 7, ¶ 25.)

15  **The Complaint**

16  　　　　Severson filed this lawsuit on January 19, 2017.  The Complaint asserts four claims for

17  breach of fiduciary duty and violation of ERISA's prohibited transaction rules against Schwab,

18  Charles Schwab & Co. Inc. ("CS&Co."), Schwab Retirement Plan Services Inc. ("SRPS"), Charles

19  Schwab Bank ("Schwab Bank"), Charles Schwab Investment Management, Inc. ("CSIM"), unnamed

20  members of the Employee Benefits Administrative Committee ("EBAC") and XYZ Corporations 1-

21  5, which are collectively referred to as the "Schwab Fiduciary Defendants," (Compl., ¶ 12); and/or

22  Schwab, CS&Co., SRPS, Schwab Bank and CSIM, which are collectively referred to  as "Schwab

23  Entity Defendants"  (Compl., ¶ 13.)  In Count I, Severson claims that the Schwab Fiduciary

24

25  [5]　In addition to matching contributions, Severson also received Employee Stock Ownership and Profit Sharing contributions.  (Morgan Decl., ¶ 11.)

26  [6]　Pursuant to the agreement, Severson also undertook to "pay for all damages, fees, costs, and

27  expenses, including reasonable attorneys' fees, incurred by Schwab or any other Releasee in defending, participating in, or investigating any matter or proceeding covered by [the release of

28  claims]."  (Ex. 7, ¶ 10.)

Defendants breached their fiduciary duties of prudence and loyalty by virtue of the Plan's inclusion of "Schwab Affiliated Products and Services," which are defined as: (1) investment options managed by Schwab Entity Defendants ("Schwab affiliated funds"), (Compl., ¶¶ 36-49); (2) the "Schwab Savings Account," a demand deposit account at Schwab Bank (Compl., ¶¶ 50-65); (3) a "Self-Directed Brokerage" window managed by CS&Co. that allows plan participants to invest "in a wide variety of mutual funds and other types of securities" (Compl., ¶¶ 66-74); and (4) unallocated Plan cash that is allegedly held and invested by Schwab Bank (Compl., ¶¶ 75-83.)

In Count II, Severson claims that Schwab Fiduciary Defendants breached ERISA's prohibited transaction rules by including Schwab Affiliated Products and Services for the purpose of benefiting the Schwab Entity Defendants who are parties in interest to the Plan. (Compl., ¶¶ 103-108.)

In Count III, Severson claims that Schwab Fiduciary Defendants are liable for each other's alleged fiduciary breaches under ERISA because they knew of, enabled, or knowingly participated in the improper conduct alleged in Counts I and II. (Compl., ¶¶ 109-114.)

In Count IV, Severson claims that the Schwab Entity Defendants breached their fiduciary duties by knowingly participating and/or benefiting from the fiduciary breaches, prohibited transactions and co-fiduciary breaches alleged in counts I-III. (Compl., ¶¶ 115-121.)

Severson seeks to bring this action "on behalf of the [Plan]," pursuant to Sections 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), to recover losses to the Plan allegedly resulting from Defendants' fiduciary breach and prohibited transactions; and pursuant to ERISA Section 1132(a)(3), 29 U.S.C. § 1132(a)(3), to recover other equitable and injunctive relief. (Compl., ¶ 2.) The action is also brought "on behalf of a class of all participants in and beneficiaries of the Plan at any time within six years of the filing of this Complaint." (Compl., ¶ 84.)

## III.   ARGUMENT

### A.   The Federal Arbitration Act Requires Arbitration of Severson's Claims

The Federal Arbitration Act ("FAA") provides that any agreement within its scope "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In determining whether a claim is arbitrable, courts are

1   guided by the FAA's "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l*

2   *Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "The standard for demonstrating

3   arbitrability is not high," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), and "any

4   doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses*

5   *H. Cone*, 460 U.S. at 24–25.  The "party resisting arbitration bears the burden of proving that the

6   claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531

7   U.S. 79, 91 (2000) (citation omitted).

8          The arbitration provisions in the Plan document and severance agreement clearly fall within

9   the embrace of the FAA.  The Plan document's arbitration provision broadly encompasses "[a]ny

10  claim, dispute, or breach arising out of or in any way related to the Plan," and thus clearly extends to

11  the ERISA claims asserted here.[7]  The arbitration provision of the severance agreement likewise

12  embraces the ERISA claims, insofar as it requires arbitration of "any dispute or breach arising out of

13  or in any way related to [Severson's] employment . . . ."

14         The fact that Severson's claims are brought pursuant to ERISA's civil enforcement

15  provisions does not in any way impede or limit the application of the arbitration provisions

16  contained in the Plan document or severance agreement.  A federal statute can override the FAA

17  only when that statute contains "a contrary congressional command," *CompuCredit Corp. v.*

18  *Greenwood*, 565 U.S. 95, 98 (2012) (citation omitted), which "will be deducible from text or

19  legislative history," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614*,* 628

20  (1985).  In *CompuCredit*, the Supreme Court rejected the argument that the Credit Repair

21  Organization Act overrode the FAA because it contained a provision that made "repeated use of the

22  _____

23  [7]     Severson became contractually bound to these terms by virtue of his participation in the Plan.
    *See Pratt v. Petroleum Prod. Mgmt. Inc. Emp. Sav. Plan & Trust*, 920 F.2d 651, 661 (10th Cir. 1990)

24  ("A pension plan is a unilateral contract which creates a vested right in those employees who accept
    the offer it contains by continuing in employment for the requisite number of years.") (citation

25  omitted); *Di Ferdinando v. Intrexon Corp.*, No. 16-cv-01826-BTM-JMA, 2016 U.S. Dist. LEXIS
    163674, at *14 (S.D. Cal. Nov. 28, 2016) ("[U]nder California law, the offer of pension plans  . . .

26  constitutes an offer for a unilateral contract" and "consideration is inherent where stock options are
    granted to employees and the employee continues employment") (citation omitted); *Carr v. First*

27  *Nationwide Bank*, 816 F. Supp. 1476, 1488, 1492 (N.D. Cal. 1993) ("[P]ension benefit plans are
    unilateral contracts which employees accept by appropriate performance," which includes

28  continuous employment with the Plan sponsor).

terms 'action,' 'class action,' and 'court'—terms that [Plaintiffs] say call to mind a judicial proceeding." 565 U.S. at 100.  In so ruling, the Court observed that it is "commonplace" for statutes to describe a cause of action "in the context of a court suit," and that "[i]f the mere formulation of the cause of action in this standard fashion were sufficient to establish the 'contrary congressional command' overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed.  But that is not the law." *Id.* at 100–01 (citation omitted).  The Court also noted that it "ha[s] repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court." *Id.* at 101 (collecting cases).[8]

Similarly, the mere fact that ERISA provides a federal court cause of action for alleged ERISA violations does not prevent parties from agreeing to adjudicate such claims in arbitration. *See Fabian Fin. Servs. v. Kurt H. Volk, Inc. Profit Sharing Plan*, 768 F. Supp. 728, 733 (C.D. Cal. 1991) (ERISA's "Section 1132(e) does deal with which judicial forum is available, federal or state, but it does not preclude reference to an arbitral forum"); *see also Bird v. Shearson Lehman/American Express*, 926 F.2d 116, 120 (2nd Cir. 1991) ("[T]he fact that Congress provided for exclusive federal jurisdiction of claims brought to enforce ERISA's substantive provisions speaks only to which judicial forum is available, not to whether an arbitral forum is available.") (citation omitted).

Consistent with this analysis, numerous courts, both in the Ninth Circuit and elsewhere, have enforced agreements to arbitrate ERISA claims, whether they be claims for benefits or claims for breach of fiduciary duty.  *See, e.g., Sanzone-Ortiz v. Aetna Health of Cal.*, Inc., No. 15-cv-03334-WHO, 2015 WL 9303993, at *5 (N.D. Cal. Dec. 22, 2015) (compelling arbitration of ERISA statutory claims under section 712, 29 U.S.C. § 1185(a)); *Fabian Fin. Servs*, 768 F. Supp. at 734 (compelling arbitration of ERISA breach of fiduciary duty claim and awarding attorney fees to the plan for its success in "vindicating the Plan's right to arbitrate "); *see also Bird*, 926 F.2d at 122 (compelling arbitration of ERISA breach of fiduciary duty claim); *Pritzker v. Merrill Lynch, Pierce,*

---

[8]   "To date, in every case in which the Supreme Court has conducted this analysis of federal statutes, it has harmonized the allegedly contrary statutory language with the FAA and allowed the arbitration agreement at issue to be enforced according to its terms."  *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 992 (9th Cir. 2016) (Ikuta, J., dissenting), *cert. granted*, 137 S. Ct. 809 (2017) (No. 16-300).

*Fenner & Smith, Inc.*, 7 F.3d 1110, 1116 (3d Cir. 1993) (compelling arbitration of ERISA breach of fiduciary duty claim); *Kramer v. Smith Barney*, 80 F.3d 1080, 1083-84 (5th Cir. 1996) (compelling arbitration of ERISA 502(a)(2) claim brought on behalf of a defined benefit pension plan); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 479 (8th Cir. 1988) (compelling arbitration of ERISA statutory claim); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000) (compelling arbitration of ERISA breach of fiduciary duty and prohibited transactions claims).

Although a Ninth Circuit panel once declined to enforce an arbitration award with respect to a claim pursuant to ERISA Section 510, 29 U.S.C. 1140, based on its view at the time that arbitrators cannot handle complex issues embedded in ERISA, *Amaro v. Continental Can Co.*, 724 F.2d 747, 750 (9th Cir. 1984), more recent rulings within the Ninth Circuit have clearly abandoned that rationale, and thus limited *Amaro* to its specific holding.  *See Sanzone-Ortiz*, 2015 WL 9303993, at *5 ("In line with courts across this country, including within this circuit, I find that [ERISA section 2(b),] 29 U.S.C. § 1001(b) does not provide the requisite congressional command necessary to override the FAA."); *Fabian*, 768 F. Supp. at 731 ("*Amaro* held that the enforcement provisions of § 510 of ERISA required judicial enforcement, and the *Graphic Communications* opinion was careful to so limit it."); *see also Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, No. 06CV0921, 2006 U.S. Dist. LEXIS 81767, at *11 n.5 (S.D. Cal. Nov. 7, 2006) ("Essentially, the [*Fabian Financial Services*] district court confined the scope of Ninth Circuit case law on the nonarbitrability of ERISA claims to the single statutory provision the Ninth Circuit had confronted in those prior cases.  Therefore, in the eyes of the Central District of California, claims under any other ERISA provision are subject to arbitration.").  And every other circuit to consider the issue has determined that ERISA does not prohibit the enforcement of arbitration agreements.  (*See supra* p. 8.)  As the Ninth Circuit recently observed, "[w]e have, in the past, expressed skepticism about the arbitrability of ERISA claims, [citing *Amaro*], but those doubts seem to have been put to rest by the Supreme Court's opinions."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1100 (9th Cir. 2006).

The fact that Severson purports to bring his claims "on behalf of the Plan" under ERISA Section 502(a) does not alter the conclusion that his claims are arbitrable.  Although Section 502(a)(2) of ERISA provides a cause of action for claims "on behalf of the plan," the plaintiff

bringing the claim is the plan participant — *not* the plan. *See Landwehr v. DuPree*, 72 F.3d 726, 732 (9th Cir. 1995) (denying motion to dismiss on statute of limitations grounds where many participants and plan fiduciaries, but not the plaintiffs, had knowledge of the claims outside the limitations period, because "the plaintiffs are Landwehr and Cole and not the Plan"); *see also Comer*, 436 F.3d at 1103 (citing *Landwehr* as holding that real party to Section 502(a)(2) claim is plan participant, rather than plan). As the party to a Section 502(a)(2) claim, a participant is free to choose, by agreement, the forum in which his claim can be litigated. That is precisely what occurred here, by virtue of Severson's participation in the Plan and his signing of the severance agreement, as well as the Form U-4. Any issue as to Severson's right to determine the forum of a claim brought "on behalf of the Plan" is, in any event, of no moment here because the Plan has independently consented to arbitration by virtue of the Plan's arbitration provision. *Compare Munro v. Univ. of S. Cal.*, No. 2:16-cv-06191, ECF No. 55 at 8, 13 (C.D. Cal. Mar. 23, 2017) (denying motion to compel arbitration of 502(a)(2) claims because the arbitration agreements were "not signed by anyone with authority to bind an ERISA plan, and not part of the plan documents" and therefore "the Plans [did] not consent[] to release their rights to proceed in court"); *Cryer v. Franklin Templeton Res., Inc.*, No.4:16-cv-04265, No. C 16-4265 CW, 2017 WL 818788, at *3 (N.D. Cal. Jan. 17, 2017) (N.D. Cal. Jan. 17, 2017) (Wilken, J.) (finding that covenant not to sue between plaintiff and employer did not bar 502(a)(2) claims brought on behalf of the plan and relying on *Bowles v. Reade*, 198 F.3d 752 (9th Cir. 1999) for the proposition that a participant cannot release claims on behalf of the plan "without the retirement plan's consent").

In short, the FAA requires enforcement of the arbitration provisions to which Severson agreed to be bound, and nothing in ERISA militates in favor of a contrary result.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY CLAIMS

**B.    The Court Should Rule that Only Individual Claims May be Arbitrated Because the Applicable Arbitration Clauses Evince No Intention to Arbitrate Class or Representative Claims[9]**

A claim that is referred to arbitration presumptively is litigated on an individual basis.  The Supreme Court has held that "a party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen S.A.*, 559 U.S. at 684.  Accordingly, courts have routinely determined that, where an arbitration agreement either expressly waives the right to class arbitration or is silent with respect to class arbitration, the parties should be directed to conduct arbitration of individual claims only.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (holding that FAA preempted California law barring the enforceability of express class arbitration waivers); *Stolt-Nielsen S.A.*, 559 U.S. at 669 (holding that arbitration agreements that are silent on the question of class arbitration could not be interpreted to allow them).  This Court should likewise conclude that the claims asserted by Severson must be arbitrated on an individual basis because neither the Plan document nor the severance agreement evinces an intent to engage in class or representative arbitration.  To the contrary, the Plan document expressly waives a participant's "right to commence, be a party to, or be an actual or putative class member of any class, collective or representative action arising out of or relating to the Plan."  (Ex. 1, ¶ 15.11 (d).)  Furthermore, there are no statutory constraints that should prevent implementation of the arbitration agreements as so construed.

1.    *The Arbitration Provisions of the Plan Document and Severance Agreement Permit Only Individual Claims to be Asserted in Arbitration*

Because arbitration is a matter of contract, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen*, 559 U.S. at 684; *see also AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553 (6th Cir. 2016) ("[a]n agreement must expressly include the possibility of classwide arbitration for

---

[9]    District courts in this Circuit have increasingly found the availability of class arbitration to be a "gateway question of arbitrability for the court to decide."  *JP Morgan Chase Bank, N.A. v. Jones*, No. C15-1176RAJ, 2016 WL 1182153, at *9 (W.D. Wash. Mar. 28, 2016), *appeal filed*, No, 16-35313.  The only federal appellate courts to consider the matter are in accord.  *See Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 335 (3d Cir. 2014); *Dell Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 869 (4th Cir. 2016), *cert. denied by* 137 S. Ct. 567 (2016); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013), *cert. denied by* 134 S. Ct. 2291 (2014).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY CLAIMS

1   us to conclude that the parties agreed to it," and where an "arbitration clause is silent on the

2   availability of classwide arbitration, [] we may not presume from 'mere silence' that the parties

3   consented to it"); *Kairy v. Supershuttle Int'l, Inc.*, No. C 08-02993 JSW, 2012 WL 4343220, at *4

4   (N.D. Cal. Sep. 20, 2012) (explaining that "arbitration agreements which are silent as to class-wide

5   arbitration, in the absence of any evidence manifesting the parties intent to the contrary, . . . require

6   individual arbitrations"); *McElrath v. Uber Techs., Inc.*, No. 16-cv-07241-JSC, 2017 WL 1175591,

7   at *4 (N.D. Cal. Mar. 30, 2017) (citing *Stolt-Nielsen* and noting that "[i]f an agreement does not

8   establish that the parties contractually agreed to class-wide arbitration, a court cannot compel class

9   arbitration").

10          Nothing in either the Plan document or Severson's severance agreement evinces an

11   agreement to submit to class arbitration.  In fact, the Plan document explicitly provides that class or

12   representative claims are waived in arbitration.  The Supreme Court, the Ninth Circuit, and this

13   Court have repeatedly upheld this type of class waiver.  *See, e.g.*, *Concepcion*, 563 U.S. at 352; *Am.*

14   *Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013); *DIRECTV, Inc. v. Imburgia*, 136

15   S. Ct. 463, 471 (2015), *on remand to* 2016 WL 2609764 (Cal. Ct. App. May 4, 2016); *Mohamed v.*

16   *Uber Techs., Inc.*, 836 F.3d 1102, 1109 (9th Cir. 2016), *amended and superseded on denial of reh'g*

17   *en banc by* 848 F.3d 1201 (9th Cir. 2016); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1228 (9th Cir.

18   2013); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1061 (9th Cir. 2013) (en banc); *Lewis v.*

19   *UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1166-1167 (N.D. Cal. 2011); *Cilluffo v. Cent. Refrigerated*

20   *Servs., Inc.*, No. EDCV 12-00886-VAP(OPx), 2012 WL 8523507, at *7–8 (C.D. Cal. Sept. 24,

21   2012).

22          The same conclusion holds with respect to the severance agreement, which likewise evinces

23   no agreement to authorize class or representative claims.  *See Stolt-Nielsen*, 559 U.S. at 687.   If

24   anything, the language of the agreement evinces the contrary intent, insofar as it was entered into

25   between Schwab and Severson personally, refers to arbitration related to "[Severson's]

26   employment," limits arbitration to a location nearest to "[Severson's] last place of employment,"

27   (Ex. 7, ¶ 1, 25), and refers to the "individual" rights that Severson agreed to waive by entering into

28

the agreement.  (Ex. 7, ¶ 9-10.)[10]  In similar contexts, courts in this Circuit have concluded that such individualized references in an arbitration agreement evinced an intent for individual arbitration only.  *See, e.g., JP Morgan Chase Bank, N.A. v. Jones*, 2016 WL 1182153, at *9 (concluding that court cannot infer that parties intended to arbitrate class claims where arbitration agreement "make[s] no reference to employee groups or to other employees" but rather "consistently refer[s] to [the parties] in the singular" and requires arbitration to take place in the state the employee was last employed).

In short, contractual principles that govern the construction of arbitration clauses dictate that Severson is limited to arbitrating individual claims for relief.

2.   *Limiting Severson to Individual Claims in Arbitration Is Consistent With ERISA's Civil Enforcement Provisions*

Limiting Severson to individual claims for relief does not infringe on his statutorily protected rights under ERISA.  The Supreme Court has recently clarified that, even though Section 502 of ERISA allows a participant to bring a claim "on behalf of the plan," participants of 401(k) plans are free to pursue claims under Section 502(a)(2) that seek monetary relief only for themselves.  *LaRue v. DeWolff, Boberg & Assocs. Inc.*, 552 U.S. 248, 254 (2008).  The Court held in *LaRue* that "[a]lthough § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  *Id.* at 256.  In other words, a 401(k) plan participant can bring a suit under Section 502(a)(2) because his/her account is held by the plan, and in that sense the claim is "on behalf of the plan," but the relief sought can be limited to his/her individual account.  *See also Comer*, 436 F.3d at 1103 ("[O]ur own precedents hold that an ERISA claimant *also* sues in a non-derivative capacity.") (citing *Landwehr*, 72 F.3d at 732–33).[11]

---

[10]   The Form U-4 that Severson signed similarly evinces an intent to waive the right to class arbitration since the agreement uses the terms "I," "me" and "my" (Ex. 4, ¶ 5,) and incorporates the FINRA rules on arbitration, which expressly preclude class arbitration.  *See also* FINRA Rule 13204(a) ("Class action claims may not be arbitrated under the Code.").

[11]   Regardless of the forum, there will be a threshold issue in this case as to whether Severson has already released his claims for individual relief; and this issue would render him unsuitable to serve as a class representative, even if his claim remained in federal court.  *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 601 (3d Cir. 2009) (observing that court had not found a single case in which a class was certified where the only proposed representative signed a release);

1    To the extent Severson may contend that Section 502(a)(2) also affords him a right to bring a

2    representative action that cannot be displaced by a class waiver, that contention cannot be reconciled

3    with recent Supreme Court precedent.  In *Italian Colors*, the Supreme Court upheld the enforcement

4    of a class waiver that prevented plaintiffs from pursuing a representative antitrust claim, even though

5    a class action was the only economically viable way for them to assert such claims.  *Italian Colors*,

6    133 S. Ct. at 2311-12.  In so ruling, the Court rejected plaintiffs' contention that enforcing the

7    waiver would prevent "effective vindication" of their statutory rights.  *Italian Colors*, 133 S. Ct. at

8    2311.  According to the Court, limiting plaintiffs to individual claims – notwithstanding their lack of

9    economic viability – did not eliminate plaintiffs' right to pursue a statutory remedy, and thus the

10   "effective vindication" exception did not apply.  *Id*.

11   The Court also took note of its prior ruling in *Gilmer v. Interstate/Johnson Lane Corp.*, 500

12   U.S. 20 (1991), in which it had "no qualms in enforcing a class waiver in an arbitration agreement

13   even though the federal statute at issue, the Age Discrimination in Employment Act, expressly

14   permitted collective actions."  *Italian Colors*, 133 S. Ct. at 2311.  The *Gilmer* Court concluded that

15   limiting the plaintiff to arbitration did not infringe on the ADEA's goal of combatting age

16   discrimination because plaintiff could still pursue his discrimination claim in arbitration; and the

17   Equal Employment Opportunity Commission, the agency charged with enforcing the ADEA,

18   retained independent authority to investigate age discrimination claims and bring collective

19   actions.  *Gilmer*, 500 U.S. at 28; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

20   473 U.S. 614 (1985) (enforcing arbitration agreement relating to claims arising under the Sherman

21   Act notwithstanding the statutory public policy objectives of the Act); *Shearson/American Express*

22

23   *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 313 (5th Cir. 2007) (rejecting plaintiffs'
     argument that releases were irrelevant to certification analysis); *Carr v. Int'l Game Tech.*, No. 3:09-
24   CV-00584-ECR, 2012 WL 909437, at *6 (D. Nev. Mar. 16, 2012) (holding that even though release
     did not bar plaintiff from seeking relief on behalf of the plan in employer stock drop litigation, the
25   release caused plaintiff's claims to be atypical of the members of the class because it made him
     subject to unique defenses), *on reconsideration*, No. 3:09-CV-00584-RCJ, 2013 WL 638834 (D.
26   Nev. Feb. 20, 2013) (denying reconsideration with respect to class certification); *In re Bellsouth
     Corp., ERISA Litig.*, No. 1:02–CV– 2440–JOF, 2005 U.S. Dist. LEXIS 46823, at *38-39 (N.D. Ga.
27   Sept. 30, 2005) ("It is true that such releases could not bind all plan participants . . . . [b]ut the
     Named Plaintiffs who signed such releases clearly cannot bring claims on behalf of the class with the
28   same vigor and interest as someone who had not signed such releases.").

*Inc. v. McMahon*, 482 U.S. 220 (1987) (same for Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act (RICO) claims); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (same for Securities Act of 1933 claims).[12]

Similarly, by bringing an individual claim for relief in arbitration, Severson can seek to establish that Defendants breached their fiduciary duties, and in that sense, pursue a "representative" claim that advances the statutory goal of deterring breaches of fiduciary duty.  *See Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F.2d 1406, 1411 (9th Cir. 1988) ("One of the overriding goals of ERISA is to prevent the misuse and mismanagement of plan assets by fiduciaries.").  Moreover, the Department of Labor ("DOL"), the entity charged with enforcement of ERISA, would still retain the ability to seek collective relief on behalf of the Plan and its participants, if it saw fit to do so, since the statute confers on the DOL an independent cause of action for purposes of asserting claims for breach of fiduciary duty.  *See* 29 U.S.C. § 1132(a)(2) (providing DOL with independent cause of action to assert breach of fiduciary duty claims on behalf of the plan).

In short, under *Italian Colors* and *Gilmer*, compelling individual arbitration of Severson's claims would not waive his right to pursue the statutory remedies contemplated by ERISA.[13]

---

[12]   The Court also observed that the burden rested with the plaintiff to show that Congress intended to preclude a waiver of the judicial forum, and that this burden could not be satisfied absent evidence of that intention in the text of the statute.  *Gilmer*, 500 U.S. at 27.  Similarly, here, there is nothing in ERISA's statutory text that would support a finding that Congress intended to preclude individual arbitration agreements.

[13]   Should the Court nevertheless conclude that Severson cannot be limited to pursuing individual claims for relief in arbitration, the Court must deny the Motion to Compel and adjudicate Severson's claims in court.  The Plan document expressly requires as much, insofar as it states that "if this class action waiver is found to be unenforceable by a court of competent jurisdiction, then any claim on a class, collective or representative basis shall be filed and adjudicated in a court of competent jurisdiction, and not in arbitration."  (Ex. 1, § 15.11(d).)  Although the severance agreement does not specifically address the issue, for the reasons previously stated, absent evidence to the contrary a court cannot direct that class or representative claims be conducted in arbitration.  This is doubly the case where, as here, the defendants who would be compelled to arbitrate these class claims against their wishes include entities and individuals who were not even parties to the severance agreement.  *See Comer*, 436 F.3d at 1104 (holding that plan participant was not bound to arbitration clause to which he was not a party).

3.   *The Court is Not Precluded by the NLRA from Ordering Severson to Arbitrate His ERISA Claims on an Individual Basis*

The Ninth Circuit's recent decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017) (No. 16-300), does not prevent enforcement of the arbitration clauses contained in the severance agreement and Plan document; nor does it prevent the construction of these clauses to limit Severson to individual claims for relief.  To begin with, it is far from clear whether *Morris* will remain the law in the Ninth Circuit, since *Morris* will be reviewed by the United States Supreme Court this fall.[14]  *Id.*  The ruling in *Morris* in any event is clearly distinguishable.

In *Morris*, a divided panel held that the National Labor Relations Act ("NLRA") prohibits an employer from "condition[ing] employment on the requirement that an employee sign" a contract that "foreclos[ed] the possibility of concerted work-related legal claims" (*id.* at 990), thus deepening an existing circuit split on this issue.  *Compare Morris*, and *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017) (No. 16–285) *with Patterson v. Raymours Furniture Co., Inc.*, 659 F. App'x 40 (2d Cir. 2016) (disagreeing with the Seventh and Ninth Circuits), *petition for cert. docketed*, (Sept. 26, 2016) (No. 16-388); *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013 (5th Cir. 2015) (same), *cert. granted,* 137 S. Ct. 809 (2017) (No. 16–307) and *Citigroup Tech., Inc. v. NLRB*, No. 15-60856, 2016 WL 7174107 (5th Cir. Dec. 8, 2016) (same).

The Ninth Circuit's holding was based on its interpretation and application of Section 8 of the NLRA, which provides that employers may not "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]."  29 U.S.C. § 158(a)(1).  The Court held that mandatory class waivers like the one at issue in *Morris* constitute coercion under Section 8 because their employment is conditioned on their agreeing to them.  *Morris*, 834 F.3d at 982 ("[A]n employer violates § 8 . . . by conditioning employment on signing a concerted action waiver.").  On the other hand, agreements to litigate (or arbitrate) individual claims remain fully enforceable as long as the employee has a free choice in the matter.  *Id.* at 982 n.4 (majority); *see also*

---

[14]   For that reason, in the event the Court should conclude that *Morris* is a potential deterrent to enforcing the arbitration clauses here, notwithstanding the arguments set forth below, it should defer ruling on the issue until the Supreme Court has had an opportunity to rule with respect to *Morris*, and stay the proceedings in this case in the interim.

1    *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1076–77 (9th Cir. 2014) (rejecting the

2    view that "an employee may never waive the right to participate in class litigation," and concluding

3    that "[h]aving freely elected to arbitrate employment-related disputes on an individual basis, without

4    interference from Bloomingdale's, [plaintiff] cannot claim that enforcement of the agreement

5    violates . . . the NLRA"); *Mohamed*, 836 F.3d at 1112 n.6 (same).

6          Here, there is no basis for the application of Section 8 rights to Severson because, as a

7    supervisory level employee, he would not even be protected by the NLRA.   29 U.S.C. § 152(2),

8    (11); *see also NLRB v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 573 (1994) (explaining that

9    the NLRA was amended "so that the term employee shall not include any individual employed as a

10   supervisor") (internal quotation marks omitted).   By his own admission, Severson was responsible

11   for training and supervising the other members of his team.   (*See supra* p. 4.)

12         In any event, unlike the agreement in *Morris*, Severson's participation in the 401(k) Plan was

13   voluntary, and thus the arbitration provision contained in the Plan document to which he became

14   bound by virtue of his participation in the Plan was not a condition of his employment.   The same is

15   true for the arbitration clause in the severance agreement:   the agreement was entered into only after

16   Severson completed his employment, and his agreement to the arbitration provision was made in

17   return for substantial additional consideration over and above his terms of employment.   Thus, it

18   cannot be said that Severson was required to forgo any right to representative litigation as a

19   condition of his employment.

20         Accordingly, the ruling in *Morris* should in no way deter this court from directing that

21   Severson's claims be pursued on only an individual basis in arbitration.

22         **C.    The Matter Should be Dismissed for Improper Venue or, in the Alternative,**
               **Stayed While Arbitration Proceeds**
23

24         Based on a finding that the arbitration clauses should be enforced, this Court would have two

25   alternative forms of relief at its disposal:   it "may either stay the action or dismiss it outright."

26   *Johnmohammadi*, 755 F.3d at 1074 (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th

27   Cir. 1988)); *see also Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008)

28   ("[E]ven where a party moves to stay litigation pending arbitration under the [FAA], the district

1  court has discretion to dismiss the complaint if it finds all of the claims before it are arbitrable.").

2  Both the FAA and California law provide that a court should stay proceedings until arbitration is

3  complete.  *See* 9 U.S.C. § 3 (providing that the court "*shall* on application of one of the parties stay

4  the trial of the action until such arbitration has been had in accordance with the terms of the

5  agreement, providing the applicant for the stay is not in default in proceeding with such arbitration")

6  (emphasis added); Cal. Code Civ. Proc. § 1281.4 (if the court has ordered arbitration, it "shall, upon

7  motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is

8  had in accordance with the order to arbitrate").  However, in this instance outright dismissal under

9  Rule 12(b)(3) would appear to be appropriate because, in light of the arbitration clauses, this lawsuit

10  was brought in an improper venue.  *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir.

11  1996).  In either case, the court should direct that the arbitration be limited to individual claims for

12  relief.[15]

### <u>CONCLUSION</u>

14      For the foregoing reasons, the Court should compel individual arbitration of Severson's

15  claims and, on that basis, dismiss the lawsuit, or stay the litigation pending the outcome of individual

16  arbitration.

---

20  [15]   If the litigation is not referred to arbitration, Defendants intend to seek an immediate appeal
21  pursuant to the FAA.  *See* 9 U.S.C. §16(a)(1)(B)-(a)(3).  The Ninth Circuit has affirmed this right
   and noted that denials of motions to compel arbitration are "immediately appealable" under the
22  FAA.  *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 917 (9th Cir. 2011); *Jones v. Deutsche
   Bank AG*, No. C 04-05357 JW, 2007 WL 1456041, at *2 (N.D. Cal. May 17, 2007).  In conjunction
23  with such an appeal, Defendants would also seek a stay from this Court pending appeal, since: the
   denial of a motion to compel is immediately appealable; the ruling on appeal would be without
24  precedent; and the parties should not be made to engage in litigation activities that could become
   moot if the decision is reversed.  *See Jones*, 2007 WL 1456041, at *2-3 (granting stay pending
25  appeal of denial of a motion to compel arbitration where the legal question concerning the
   enforceability of the arbitration agreement had not yet been addressed by the Ninth Circuit and
26  requiring the parties to continue to prepare for trial would cause irreparable harm); *see also Munro v.
   Univ. of S. Cal.*, No. 2:16-cv-06191, ECF No. 55 at 8 (C.D. Cal. Mar. 23, 2017) (explaining that with
27  respect to the question of whether ERISA 502(a)(2) claims brought on behalf of the plan are subject
   to arbitration "[t]he parties have not cited, and the Court has not found, any Ninth Circuit case law
28  directly addressing this issue").

Dated:  April 7, 2017                    Respectfully submitted,


                                         By:    _/s/ Myron D. Rumeld_

                                         Myron D. Rumeld (*pro hac vice*)
                                         Proskauer Rose LLP
                                         Eleven Times Square
                                         New York, NY. 10036
                                         Telephone: (212) 969-3021
                                         Facsimile: (212) 969-2900
                                         Email: mrumeld@Proskauer.com

                                         Howard Shapiro (*pro hac vice*)
                                         Stacey C.S. Cerrone (*pro hac vice*)
                                         Tulio D. Chirinos (*pro hac vice*)
                                         Proskauer Rose LLP
                                         650 Poydras Street, Suite 1800
                                         New Orleans, LA 70130-6146
                                         Telephone: (504) 310-4085
                                         Facsimile: (504) 310-2022
                                         Email: howshapiro@proskauer.com
                                         scerrone@proskauer.com
                                         tchirinos@proskauer.com

                                         Ronald S. Kravitz (SBN 129704)
                                         Kolin C. Tang (SBN 279834)
                                         SHEPHERD, FINKELMAN, MILLER
                                         & SHAH, LLP
                                         44 Montgomery Street, Suite 650
                                         San Francisco, CA 94104
                                         Telephone: (415) 429-5272
                                         Facsimile: (866) 300-7367
                                         Email: rkravitz@sfmslaw.com
                                         ktang@sfmslaw.com

                                         Lowell Haky (SBN 178526)
                                         Mai Klaassen (SBN 209546)
                                         CHARLES SCHWAB & CO INC.
                                         211 Main Street
                                         San Francisco, CA 94105
                                         Telephone: (415) 667-0600
                                         Facsimile: (415) 667-1638
                                         Email: lowell.haky@schwab.com
                                         mai.klaassen@schwab.com

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS AND TO STAY
CLAIMS