IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL F. DORMAN, individually as a participant in the SCHWAB PLAN RETIREMENT SAVINGS AND INVESTMENT PLAN and on behalf of a class of all those similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>CHARLES SCHWAB & CO. INC.; CHARLES SCHWAB & CO INC.; SCHWAB RETIREMENT PLAN SERVICES INC.; CHARLES SCHWAB BANK; CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.; JOHN DOES 1-50; and XYZ CORPORATIONS 1-5,<br><br>    Defendants. | Case No. 17-cv-00285-CW<br><br>ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION, DISMISS, AND TO STAY CLAIMS AND DEFENDANTS' ADMINISTRATIVE MOTION TO SEAL<br><br>(Dkt. Nos. 70, 71) |

In this putative class action ERISA case, Defendants Charles Schwab Corporation, Charles Schwab & Co Inc., Schwab Retirement Plan Services Inc., Charles Schwab Bank, Charles Schwab Investment Management, Inc., Walter W. Bettinger III, Charles R. Schwab, Joseph R. Martinetto, Martha Tuma, Jay Allen, Dave Callahan, John C. Clark, John Does 1-50, and XYZ Corporations 1-5 move to compel individual arbitration of Plaintiff Michael F. Dorman's claims against Defendants and to stay or dismiss this action while the arbitration is pending. Alternatively, Defendants move to stay this action pending a ruling by the Supreme Court in Morris v. Ernst & Young, LLP, 834 F.3d 975 (9th Cir. 2016), cert. granted, 137 S. Ct. 809 (2017). Plaintiff

filed an opposition to this motion and Defendants filed a reply. On November 14, 2017, the Court held a hearing on Defendants' motion. Upon considering the papers and the arguments of counsel, the Court DENIES Defendants' motion.

## FACTUAL BACKGROUND

Unless otherwise noted, the factual background is from the allegations of the First Amended Complaint. See Docket No. 56.

The Charles Schwab Corporation (Charles Schwab) and its subsidiaries, Charles Schwab & Co. Inc. and Charles Schwab Bank (the Schwab entities), provide a wide range of financial services, including wealth management, securities brokerage, banking, money management, custody, and financial advisory services. Schwab News Release July 2017, available at https://aboutschwab.com/images/uploads/inline/schwab_q2_2017_earnings_release.pdf. Walter W. Bettinger III, Charles R. Schwab, and Joseph R. Martinetto are members of the Board of Directors of Charles Schwab. Martha Tuma, Jay Allen, Dave Callahan and John C. Clark are members of the Employee Benefits Administrative Committee at Charles Schwab.

The SchwabPlan Retirement Savings and Investment Plan (SchwabPlan or the Plan) is a defined contribution, individual account plan sponsored and administered by Charles Schwab. Eligible employees of the Schwab entities may participate by contributing a portion of their wages to their account and receive matching employer contributions, as well as any investment returns, less any applicable fees. Participants in the Plan may choose to invest their contributions (and the matching employer contributions) in one or more investment

2

options made available by the Plan. Declaration of Holly Morgan (Morgan Decl.) ¶¶ 3-5, Ex. 1.

Since 2009, the Plan has offered several investment options that were managed by Charles Schwab, including the Schwab S&P 500 Index Fund, seven Schwab mutual funds, ten Schwab "target date" funds, a Schwab money market fund, and a deposit account in the Schwab Bank. Dorman alleges that these Schwab-affiliated funds charged higher fees and performed more poorly than other investment options on the market. Dorman contends that the Schwab entities violated their fiduciary duties to the Plan in offering these Schwab-affiliated funds without "meaningful investigation" into whether they were prudent investments and whether there were better options available.

Dorman was employed at Charles Schwab & Co., Inc. for six years, until he left the company on October 8, 2015. Id. ¶ 7. On February 23, 2009, shortly after starting his employment, he completed a Uniform Application for Securities Industry Registration or Transfer (Form U-4), which is required for all registered representatives under the Financial Industry Regulatory Authority (FINRA) rules. Id. ¶ 8, Ex. 3. Form U-4 contains a provision stating:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

On December 19, 2014, Dorman electronically signed an Acknowledgment of the Schwab Investor Financial Consultant

3

Compensation Plan (Compensation Plan Acknowledgment). Id. ¶ 9, Ex. 4. The Compensation Plan describes the compensation structure of a financial consultant (FC) like Dorman. The Acknowledgment contains a section entitled "11.0 Arbitration of Disputes." This section states:

> 11.1 Any controversy, dispute, or claim arising out of or relating to the FC's employment or the termination of employment shall be resolved by binding arbitration . . .
>
> [ . . . ]
>
> 11.3 This Agreement does not apply to . . . claims for benefits under any ERISA-governed benefit plan(s), which shall be resolved pursuant to the claims procedures under such benefit plans.
>
> [ . . . ]
>
> 11.5 Any claims or disputes between the FC and the Company shall be brought solely on an individual basis. The FC and the Company agree to waive the right to commence, be a party to, or be an actual or putative class member of any class, collective, or representative action arising out of or relating to the FC employment or termination of employment. If this waiver is found to be unenforceable by a civil court of competent jurisdiction, then any claim on a class, collective, or representative basis shall be filed and adjudicated in a court of competent jurisdiction, and not in arbitration.

Id. at 9.

While Dorman was employed at Charles Schwab, he participated in the Plan. Id. ¶¶ 9-10. On December 18, 2015, after Dorman left his employment with Schwab, he received a full distribution of his account balance and ceased his participation in the Plan. Id. ¶ 12.

A version of the Plan Document that was restated and amended as of January 1, 2016 and executed on June 13, 2016 provides:

> 15.11 Arbitration of Disputes
> (a) Any claim, dispute or breach arising out of or

4

in any way related to the Plan shall be settled by binding arbitration . . .

Id., Ex. 1 at 56.

On January 19, 2017, Dorman filed the present litigation. He brings claims on behalf of the Plan pursuant to ERISA § 502(a)(2) to recover losses resulting from Defendants' fiduciary breaches and prohibited transactions and pursuant to ERISA § 502(a)(3) to recover injunctive and other equitable relief.

## LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that any agreement within its scope "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA represents a "liberal federal policy favoring arbitration agreement, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). A party to a valid arbitration agreement may petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In considering a motion to compel arbitration, a court should consider "whether a valid arbitration agreement exists" and "whether the agreement encompasses the dispute at issue." Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). If so, the court should enforce the agreement. Id.

A court has the power to stay proceedings, which arises from its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for

5

counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). "A stay is not a matter of right, even if irreparable injury might otherwise result." Nken v. Holder, 556 U.S. 418, 433 (2009).

Instead, a stay is "an exercise of judicial discretion," and "the propriety of its issue is dependent upon the circumstances of the particular case." Id. (citation and internal quotation and alteration marks omitted). The party seeking a stay bears the burden of justifying the exercise of that discretion. Id. In determining whether to grant a stay, courts generally consider the following competing interests: "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

DISCUSSION

I. Motion to Compel Arbitration

    A. Applicability of various arbitration agreements to Dorman's claims

Defendants contend that the Plan Document, Form U-4, and the Compensation Plan Acknowledgment are valid agreements that require arbitration under the FAA.

        1. Plan Document

Defendants argue that the Plan Document binds Dorman. But the Plan Document provided by Defendants was dated January 1, 2016 and executed on June 13, 2016, over a year after Dorman

terminated his participation in the Plan on December 18, 2015.[1] See Morgan Decl., Ex. 1 at 2, 90. The Plan Document issued a year after Dorman ceased participation in the Plan cannot apply to his claims. To hold otherwise would be inequitable because it would allow a plan defendant to amend the plan documents unilaterally at any time, even after a participant has brought suit against the defendant, and put the participant at a disadvantage.

Defendants provide no authority supporting their contention that a plan document executed after the participant has ceased participation in the plan can bind the participant to arbitration. For example, in Chappel v. Lab. Corp. of Am., the Ninth Circuit enforced the plan's mandatory arbitration clause even though the plaintiff "had not previously known about the clause." 232 F.3d 719, 723 (9th Cir. 2000). But there is no indication that the plan's mandatory arbitration clause was enacted after the plaintiff ceased all participation in the plan. See id. The remaining cases cited by Defendants are similarly unavailing because, in each case, the plan document was in effect while the plaintiff participated in the plan. See Smith v. Aegon Companies Pension Plan, 769 F.3d 922, 931 (6th Cir. 2014) (venue selection amendment enacted in 2007 applied to plaintiff's claim because plaintiff continued to receive plan payments through 2011); Marin v. Xerox Corp., 935 F. Supp. 2d 943, 945 (N.D. Cal. 2013) (plan document in effect at the time defendant denied

---

[1] Defendants did not provide any other version of the Plan Document.

7

plaintiff's claim controlled); Laasko v. Xerox Corp., 566 F. Supp. 2d 1018, 1022 (C.D. Cal. 2008) (same). The Plan Document therefore does not bind Dorman.

### 2. Form U-4

Defendants argue that Form U-4's arbitration provision encompasses Dorman's claims because the provision covers "any dispute, claim or controversy" between Dorman and Schwab. Defendants read this provision out of context. The provision actually states:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) . . .

Morgan Decl., Ex. 3 at 12 ¶ 5. The arbitration provision does not apply to any dispute between Dorman and Schwab, but only those that are "required to be arbitrated under the rules, constitutions, or by-laws of the SROS indicated in Section 4." Id. Section 4 of Form U-4 lists a number of SROs, or self-regulatory organizations such as FINRA, but mentions nothing whatsoever about the Plan. Id. at 2-4. Defendants fail to explain adequately why the language of this provision encompasses Dorman's claims.

### 3. Compensation Plan Acknowledgment

The Compensation Plan Acknowledgment arbitration and class action provisions are limited to claims "arising out of or relating to the [financial consultant's] employment or the termination of employment." Morgan Decl., Ex. 4 §§ 11.1, 11.5. While Defendants contend that Dorman's breach of fiduciary duty claims are ones "arising out of or relating to [his] employment

8

or termination of employment," it is not clear that Defendants are correct. Defendants themselves contend elsewhere that ERISA claims are not ordinarily viewed as "work-related legal claims." Motion at 18. Moreover, the arbitration provision contains an exception for "claims for benefits under any ERISA-governed employee benefit plan(s)," which are to be resolved according to the "claims procedures under such benefit plans." Id. § 11.3. Dorman's claims, which arise not under the Compensation Plan but under the SchwabPlan, are therefore governed by the claims procedures of the SchwabPlan.

Because the arbitration provisions cited by Defendants do not encompass Dorman's claims, they do not require him to submit his claims to arbitration.

B. Bowles v. Reade

Even if the arbitration provisions cited by Defendants encompassed Dorman's claims, the provisions could not be enforced. Dorman brings his claims pursuant to §§ 502(a)(2) and 502(a)(3) "on behalf of the plan." He cannot waive rights that belong to the Plan, such as the right to file this action in court.

The Court recently resolved this question in a similar case, Cryer v. Franklin Templeton Res., Inc., 2017 WL 4410103 (N.D. Cal. Oct. 4, 2017). There, a release and class action waiver signed by the plaintiff could not be enforced against the plaintiff's § 502(a)(2) claims brought on behalf of the plan. Id. at *3. Relying on Bowles v. Reade, 198 F.3d 752 (9th Cir. 1999), the Court explained that "a plan participant cannot settle, without the plan's consent, a § 502(a)(2) breach of

9

fiduciary duty claim seeking 'a return to [the plan] and all participants of all losses incurred and any profits gained from the alleged breach of fiduciary duty.'" Id. (quoting Bowles, 198 F.3d at 760). See also In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 594 (3d Cir. 2009) ("The vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2)."). By the same token, a participant bringing a § 502(a)(2) claim also cannot release the right to file in court or the right to file a class action on behalf of a plan, which also belong to the plan. Cryer, 2017 WL 4410103, at *4 (quoting Munro v. Univ. of S. California, 2017 WL 1654075, at *5 (C.D. Cal. Mar. 23, 2017)) ("Just as a participant suing on behalf of a plan under § 502(a)(2) cannot waive a plan's right to pursue claims, a participant cannot waive a plan's right to file its claims in court."). The Court therefore concluded that the release and class action waiver could not be enforced against the plaintiff's claims brought in a representative capacity on behalf of the plan. Id.

Here, too, enforcement of the arbitration and class action provisions would violate the principles set forth in Bowles v. Reade. Dorman brings §§ 502(a)(2) and 502(a)(3) claims seeking to restore losses incurred by the Plan. See Docket No. 56 at 35 (Amended Complaint). As a result, he cannot release the right to file a claim in court or the right to file a class action, both of which belong to the Plan.

Defendants argue that the Court's reasoning in Cryer does not apply to this case because the Plan agreed to arbitration by

virtue of its Plan Document's arbitration provision. See Plan Document § 18.1 (board of directors of the Plan Sponsor reserves the right to . . . adopt any amendment or modification thereto"). But the Court has already concluded that the Plan Document does not bind Dorman because it was executed after he ceased all participation in the Plan.

Additionally, the Plan Document was executed unilaterally by the plan sponsor, Charles Schwab. See Reply at 8; Morgan Decl., Ex. 1 at § 18.1(a). A plan document drafted by fiduciaries--the very people whose actions have been called into question by the lawsuit--should not prevent plan participants and beneficiaries from vindicating their rights in court. See Johnson v. Couturier, 572 F.3d 1067, 1080 (9th Cir. 2009) (citing ERISA § 410(a) and holding that "if an ERISA fiduciary writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect"). Otherwise, "fiduciaries would essentially never be held to account for their potential wrongdoing in court" and they would receive "many procedural advantages at the outset of any § 502(a)(2) action that they would not be entitled to in a court proceeding." Munro, 2017 WL 1654075, at *6. "Indeed[,] allowing such arbitration agreements to control participants' § 502(a)(2) claims would, in a sense, be allowing the fox to guard the henhouse." Id.

C. Morris v. Ernst & Young, LLP

Because the Court has already found that the arbitration provisions either do not apply to Dorman's claims or are unenforceable against them pursuant to Bowles, the Court need not

11

consider the parties' arguments on whether Morris applies to Dorman's claims. Nevertheless, in the interest of completeness, the Court briefly addresses the parties' arguments.

Morris holds that class action waivers are unenforceable under the NLRA when they are required by the employer as a condition of employment. Morris, 834 F.3d at 980-83. Thus, Morris would appear to bar any provisions requiring individual arbitration of Dorman's claims that Dorman signed as a condition of his employment. Although Defendants contend that the Court should not apply Morris in this case because the Supreme Court has granted certiorari, Morris remains good law and must be applied until the Supreme Court decides otherwise. See, e.g., United States v. Joey, 974 F.2d 1344 (9th Cir. 1992) ("Although the Supreme Court has granted certiorari in [the case forming the basis for affirmance], we are bound by our prior decision until the Court decides otherwise.").

In sum, the arbitration provisions cited by Defendants (Plan Document, Form U-4, and Compensation Plan Acknowledgment) are not enforceable against Dorman's claims for three independent reasons: (1) they do not bind Dorman or their scope does not encompass Dorman's claims, (2) Bowles v. Reade bars their enforcement, and (3) Morris v. Ernst & Young, LLP and the NLRA bar their enforcement. Accordingly, Defendants' motion to compel arbitration must be denied.

II. Motion to Stay Pending Decision in Morris

Because the Court's denial of Defendants' motion to compel arbitration does not rely on Morris, Defendants have not established the need for a stay pending the Supreme Court's

12

decision in the same case.  Defendants have not shown that they will suffer any harm absent a stay, nor have they shown that any issues of law or proof will be simplified if the case is stayed pending a decision in Morris.  On the other hand, Dorman has a right to timely adjudication of his claims.  Defendants' request to stay the case is denied.

III. Administrative Motion to Seal

Defendants seek to seal redacted portions of the Compensation Plan Acknowledgment filed in support of their motion to compel arbitration or stay the case.  In considering sealing requests, "a strong presumption in favor of access is the starting point."  Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006)(internal quotation marks omitted).  Parties seeking to seal documents relating to dispositive motions bear the burden of articulating "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process."  Id. at 1178-79 (internal quotation marks and citation omitted).  Defendants filed a declaration pursuant to Civil Local Rule 79-5(d) stating that the redacted portions of the Compensation Plan Acknowledgment contain Charles Schwab's proprietary compensation formulas and strategic business goals.  Disclosure of compensation information might cause Defendants competitive harm.  Because Defendants have narrowly tailored their request to include only sealable information, this request is granted.

13

CONCLUSION

The Court DENIES Defendants' motion to compel arbitration, to dismiss, and to stay claims (Docket No. 70). The Court GRANTS Defendants' administrative motion to seal (Docket No. 71).

IT IS SO ORDERED.

Dated: January 18, 2018

CLAUDIA WILKEN
United States District Judge