IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL F. DORMAN, individually as a participant in the SCHWAB PLAN RETIREMENT SAVINGS AND INVESTMENT PLAN and on behalf of a class of all those similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>THE CHARLES SCHWAB CORPORATION; CHARLES SCHWAB & CO INC.; SCHWAB RETIREMENT PLAN SERVICES INC.; CHARLES SCHWAB BANK; CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.; WALTER W. BETTINGER III; CHARLES R. SCHWAB; JOSEPH R. MARTINETTO; MARTHA TUMA; JAY ALLEN; DAVE CALLAHAN; JOHN C. CLARK; JOHN DOES 1-50; and XYZ CORPORATIONS 1-5,<br><br>       Defendants. | Case No. 17-cv-00285-CW<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT<br><br>(Dkt. No. 88) |

    Defendants The Charles Schwab Corporation, Charles Schwab & Co. Inc., Schwab Retirement Plan Services Inc., Charles Schwab Bank, Charles Schwab Investment Management, Inc., Walter W. Bettinger III, Charles R. Schwab, Joseph Martinetto, Martha Tuma, Jay Allen, Dave Callahan, and John C. Clark move to dismiss Plaintiff Michael F. Dorman's first amended complaint. On July 17, 2018, the parties appeared for a hearing. Having considered the papers and the arguments of counsel, the Court GRANTS in part Defendants' motion to dismiss.

# BACKGROUND[1]

The Plan is a defined contribution, individual account plan. All eligible employees of The Charles Schwab Corporation (CSC) and its affiliates may participate in the Plan. Participants in the Plan may choose to invest in various Schwab-affiliated and unaffiliated investment options. For example, on January 1, 2011, the Plan offered twelve core investment options: four affiliated funds, seven unaffiliated funds, one company stock fund, and a family of affiliated target date funds. Declaration of Holly Morgan (Morgan Decl.), Ex. 3 (2011 Summary Plan Description). As of April 24, 2017, the Plan offered seventeen core investment options: seven Vanguard index funds, eight Schwab index funds, one company stock fund, and the Schwab Bank Savings Account. Id., Ex. 6 (2017 Summary Plan Description) at 15.

Dorman is an individual who participated in the Plan from 2009 to 2015. During his participation, Dorman invested in both affiliated and unaffiliated options, including seven Vanguard funds. Id. ¶ 4; Ex. 2 (Dorman SRI: Allocation Report).

Dorman has sued three groups of Defendants. The first is the Entity Defendants: Schwab; Charles Schwab & Co, Inc. (CS&Co), Schwab's broker-dealer subsidiary that allegedly provided several of the affiliated funds at issue; Charles Schwab Investment Management, Inc. (CSIM), an investment management company that allegedly managed some of the affiliated funds at issue; Charles Schwab Bank (CSBank), a Schwab subsidiary that is a federal savings association; and Schwab Retirement Plan Services, Inc.

---

[1] Unless otherwise noted, the factual background is taken from the First Amended Complaint (FAC). See Docket No. 56.

(SRPS), which allegedly provided recordkeeping and similar services to the Plan. The second group is the Fiduciary Defendants, which includes the Entity Defendants listed above as well as members of the Plan's Employee Benefits Administration Committee (EBAC), who allegedly chose the investments, paid fees from the Plan's assets, generally administered the Plan, and periodically reported to Schwab's Board. The third is the Board of Director Defendants, which includes several individual members of the board of CS&Co.

Dorman's complaint alleges five counts: (I) that the Fiduciary Defendants breached their ERISA §§ 404(a) and (b) duties by including affiliated funds without investigating cheaper, better performing alternatives, (II) that the Fiduciary Defendants violated ERISA § 406(a), which prohibits ERISA fiduciaries from causing ERISA plans to engage in certain enumerated transactions with parties in interest, (III) that the Board of Director Defendants violated their duties of prudence and loyalty under ERISA § 404(a)(1)(A) and (B), (IV) that the Fiduciary Defendants are liable under ERISA § 405 for the misconduct of other fiduciaries, and (V) that equitable relief should be granted under ERISA § 502(a)(3) against the Equity Defendants who knowingly participated and received the benefits of the fiduciary breaches and transactions above. Defendants move to dismiss all claims for failure to state a claim. For the reasons below, Defendants' motion to dismiss counts I, III, IV are GRANTED with leave to amend, except as to the self-directed brokerage (PCRA) fund. Defendants' motion to dismiss counts II and V is DENIED.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Twombly, 550 U.S. at 555. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice. Id. at 1061. However, the court need not accept legal conclusions, including threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

DISCUSSION

I. Fiduciary breach claim

Defendants request dismissal of Dorman's ERISA claim for

4

breach of the fiduciary duties of prudence and loyalty. "An ERISA fiduciary must discharge his responsibility with the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use." Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828 (2015). The duty of loyalty requires a ERISA fiduciary to act "solely in the interest of the participants and beneficiaries." White v. Chevron Corp., 2016 WL 4502808, at *1 (N.D. Cal. Aug. 29, 2016) (quoting § 404(a)(1)(A)). For example, it is inappropriate for fiduciaries to engage in self-dealing, or otherwise create a conflict between their personal interests and their fiduciary duties. Id. at *4 (citing Rest. (Third) of Trusts § 78 (2007)). With respect to the duty of prudence, the focus is on whether the fiduciaries "employed the appropriate methods to investigate the merits of the investment and to structure the investment." Tibble v. Edison Int'l, 729 F.3d 1110, 1136 (9th Cir. 2013), vacated on other grounds, 135 S. Ct. at 1823.

A. Affiliated funds

Dorman's fiduciary breach claim first alleges that Defendants improperly offered and maintained many affiliated funds and failed to investigate alternatives that had lower fees and better performance. FAC ¶ 116.

Defendants respond that including affiliated funds is not per se improper. Thus, this fact alone does not show that it is plausible that Defendants breached their fiduciary duties. They contrast this case with Cryer, where the plan offered only affiliated funds. Cryer v. Franklin Templeton Res., Inc., 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) (approving plaintiff's

allegations that defendant "breached its fiduciary duty by offering only its own products . . . which charged higher fees than and performed poorly as compared to available comparable non-proprietary funds and products"). Indeed, the facts in Cryer raised a stronger inference that the plan's fiduciaries did not conduct a proper investigation into other alternatives in the market. Here, Defendants offered a roughly equal mix of affiliated and unaffiliated funds, and so Cryer's rationale does not apply.

Dorman's position seems to be that it is enough to allege that Defendants offered one affiliated fund with cheaper, better performing alternatives. This cannot be correct. To so hold would mean that almost every plan administrator who offered an affiliated fund would be subject to an ERISA suit. Standing alone, offering and retaining funds that have underperformed modestly and have somewhat higher fees is not enough to show malfeasance.

As a preliminary matter, the Schwab funds appear to have charged only slightly higher fees and underperformed by only a modest amount. For example, Schwab's S&P 500 Index Fund fees were 0.09% in 2011, while three other funds' fees were 0.04%, 0.05%, and 0.06%. FAC ¶ 53. Schwab's S&P 500 Index Fund's tracking error in 2013-2015 averaged 0.11%, while a couple of other funds identified by Dorman averaged .03% to 0.07% during those same years, with one fund averaging 0.13% in 2013. Id. ¶ 56. This may not be "out of the ordinary enough to make the funds imprudent." Tibble, 729 F.3d at 1135 (holding that summary judgment was warranted where expense ratio of roughly forty funds

6

varied from .03% to 2%); Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009) (dismissing claim where twenty funds' expense ratios were .07% to just over 1%).

In any event, in choosing funds, a fiduciary considers not only modest differences in price and performance, but also other relevant factors, such as strategy, security lending practices, economic cycles, and market fluctuations. The law is clear that fiduciaries can "value investment features other than price, and indeed are required to do so." White v. Chevron Corp., 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017). See also Hecker, 556 F.3d at 586 ("nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)"). For these reasons, funds may continue to hold a fund despite slight underperformance. "Indeed, a fiduciary may – and often does – retain investments through a period of underperformance as part of a long-range investment strategy." White, 2016 WL 4502808, at *17 (citing Jenkins v. Yager, 444 F.3d 916, 926 (7th Cir. 2006)).

While Dorman contends that he does not have to rule out "every possible lawful explanation" for Defendants' conduct, he is required under Iqbal to show that his allegations are plausible. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 596–97 (8th Cir. 2009). He has not done so here. It is not reasonable to infer from Dorman's allegations that Defendants acted disloyally and the process by which they managed the Plan was flawed. White, 2016 WL 4502808, at *17 (holding that "ERISA requires a plaintiff to plead some other objective indicia of imprudence"); Pension Ben. Guar. Corp. ex rel. St. Vincent

7

Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 718 (2d Cir. 2013) (stating that a plaintiff must ensure that his allegations contain "nonconclusory factual content raising a plausible inference of misconduct and does not rely on 'the vantage point of hindsight.'"); cf. id. Braden, 588 F.3d at 596 (holding that allegations that fiduciaries provided plan with "a relatively limited menu of funds" "despite the ready availability of better options" raised the inference that "the process by which appellees selected and managed the funds in the Plan would have been tainted by failure of effort, competence, or loyalty").

B.  Stable value fund claim

Dorman's fiduciary breach claim also challenges Defendants' decision to include the Schwab Value Advantage Money Fund (a money market fund) and the Schwab Savings Account (a demand deposit account) as the Plan's capital preservation options instead of an unaffiliated stable value fund.  Dorman alleges that, after Schwab's stable value fund folded, Defendants replaced it with the two affiliated funds described above.  Dorman argues that this was an act of imprudent self-dealing.  He further argues that Defendants should have offered a stable value fund, which "hold[s] longer-duration instruments" and "generally outperform[s] money market funds, which invest exclusively in short-term securities."  Abbott v. Lockheed Martin Corp., 725 F.3d 803, 806 (7th Cir. 2013).  Dorman also states that the Schwab Value Advantage Money Fund and Savings Account underperformed drastically as compared to the Hueler Index Average Return, which is the industry standard measurement of the

8

average return of stable value funds.

Defendants argue that Dorman's allegations in support of this claim are demonstrably false, citing a communication that Schwab sent out to Plan participants stating that seventy percent of the funds previously invested in the Stable Value Fund were reallocated to an unaffiliated fund and thirty percent were reallocated to a Schwab money market fund. Declaration of Tulio Chirinos (Chirinos Decl.), Ex. 13 (March 20, 2012 Notice). At the hearing, Dorman conceded Defendants' point and argued that his claim still holds weight with respect to the thirty percent of funds transferred to the Schwab money market fund. This concession undermines Dorman's claim. First, the FAC's allegations are factually incorrect. Second, Dorman's revised theory does not address the fact that Defendants reallocated seventy percent of the funds to unaffiliated funds, rendering implausible his assertion that Defendants engaged in improper self-dealing.

Moreover, Defendants are not required to provide a stable value fund. ERISA does not require a plan to include such a fund; it "requires only that the Plan offer some type of low-risk capital preservation option." White, 2017 WL 2352137, at *11. Accordingly, Dorman's allegations regarding the stable value fund do not support his claim.

C.  Self-Directed Brokerage (PCRA)

Defendants further challenge Dorman's allegations with respect to the inclusion of Schwab's Self-Directed Brokerage system, which Defendants call the PCRA. This system allows participants to elect to invest in numerous mutual funds and

9

other types of securities, including domestic and foreign stocks and bonds, mutual funds, and exchange-traded funds. FAC ¶¶ 82-83. Dorman alleges that Defendants offered this system, which was too complex for "all but the most sophisticated of investors," without investigating whether another self-directed brokerage would have been a better option than their own. Id. ¶¶ 88-89. Dorman alleges that Defendants did so because they could collect fees from PCRA participants.

These allegations are insufficient to support a breach of fiduciary duty claim. The claim that PCRA was overly complex is vague. Moreover, the inclusion of the PCRA actually shows that Defendants provided participants with "additional investment options" and "opportunity to diversify," which discourages an inference of breach of fiduciary duty. Id. ¶ 88. And, while the Entity Defendants may have received some fees from program participants, this fact alone does not raise an inference of breach of fiduciary duty. As explained previously, offering affiliated funds is not enough.

In addition, Dorman lacks standing to bring a claim attacking PCRA because he himself did not use this program. To establish Article III standing, a plaintiff must demonstrate he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). Such an injury must be "an invasion of a legally protected interest that is concrete and particularized." Id. at 1548 (internal quotation marks omitted). This is a threshold

jurisdictional question that must be considered in every case. Bruce v. United States, 759 F.2d 755, 757 (9th Cir. 1985).

PCRA is separate from the core investment options made available through the Plan. 2017 Summary Plan Description at 16 ("CRA is a self-directed brokerage account" that "allows you to make investments outside of Core Funds available through the 401(k) Plan"). PCRA is an optional product "for more experienced investors who want to take a greater role in managing their retirement portfolios." Id. To open a PCRA, a participant must complete an online PCRA application. Id. Dorman does not allege that he participated in the PCRA; Defendants' senior benefits manager filed a declaration indicating that Dorman never participated in the PCRA. Morgan Decl. ¶ 8.

Because Dorman did not participate in the PCRA, he lacks standing to bring the PCRA claim alleged in his complaint. He cannot allege that he was injured by Defendants' allegedly overly-complicated program if he never actually experienced that program. See Marshall v. Northrop Grumman Corp., 2017 WL 2930839, at *9 (C.D. Cal. Jan. 30, 2017) (holding that plaintiff lacks standing with respect to optional investment options and services); Daugherty v. Univ. of Chicago, 2017 WL 4227942, at *5 (N.D. Ill. Sept. 22, 2017) (holding that a plaintiff who did not participate in CRP and TIAA loan programs does not have standing to challenge those programs under ERISA because of Spokeo's concrete injury requirement). This is in contrast to Cryer, where the plaintif's allegation that he had been injured was fairly traceable to Defendants' decision to offer only its own funds. Cryer, 2017 WL 818788, at *4.

11

## II. Prohibited transaction claim

Defendants also move to dismiss Dorman's prohibited transactions claim, which alleges that Defendants violated ERISA § 406 by "including and failing to remove the Schwab Affiliated Products and Services as investment options within the Plan or as services for the Plan" and by paying fees and expenses to affiliates using Plan assets. FAC ¶¶ 119-24.

### A. Statute of limitations

Defendants first argue that this claim fails because it is time barred under ERISA's statute of limitations.

A claim may be dismissed under Rule 12(b)(6) if it is clear from the face of the complaint that the statute of limitations has run. Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). ERISA's statute of limitations provides, "No action may be commenced under this subchapter with respect to a fiduciary's breach . . . after the earlier of –"

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> [ . . . ]

ERISA § 1113(a).

Defendants' argument relates to subsection (2). They contend that Dorman had actual knowledge of the specific facts supporting his prohibited transaction claim, namely, that the Plan paid fees to Schwab for affiliated products and services, more than three years before he filed suit. Defendants point to

12

a 2011 annual fee disclosure statement which they state was sent via U.S. mail or email to all Plan participants in August 2012. Chirinos Decl. ¶ 5, Ex. 3.

Defendants have not demonstrated actual knowledge that is clear from the face of the complaint and judicially noticeable documents. They have not shown that Dorman in fact received the 2011 annual fee disclosure statement. Accordingly, dismissal based on the statute of limitations is inappropriate at this time.

B. Transactions do not involve Plan assets

Defendants also argue that Dorman failed to plead adequately that the transactions at issue involve "assets of the plan," as required for a prohibited transaction claim. Dorman points out that only certain subparts of ERISA § 406(a) and (b) require plan assets to be implicated:

> (a) Transactions between plan and party in interest. Except as provided in section 1108 of this title:
> > (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
> > > (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> > > (B) lending of money or other extension of credit between the plan and a party in interest;
> > > (C) furnishing of goods, services, or facilities between the plan and a party in interest;
> > > (D) transfer to, or use by or for the benefit of a party in interest, **of any assets of the plan**; or
> > > (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.
> > (2) No fiduciary who has authority or discretion to control or manage **the assets of a plan** shall permit the plan to hold any employer security or

13

>           employer real property if he knows or should know
>           that holding such security or real property
>           violates section 1107(a) of this title.
>     (b) Transactions between plan and fiduciary.  A
>     fiduciary with respect to a plan shall not—
>           (1) deal with the **assets of the plan** in his own
>           interest or for his own account,
>           (2) in his individual or in any other capacity act
>           in any transaction involving the plan on behalf of
>           a party (or represent a party) whose interests are
>           adverse to the interests of the plan or the
>           interests of its participants or beneficiaries, or
>           (3) receive any consideration for his own personal
>           account from any party dealing with such plan in
>           connection with a transaction involving the **assets
>           of the plan**.

Emphasis added.  Further, Dorman contends that ERISA provides that shares of the mutual funds owned by a plan are plan assets.  ERISA § 401(b)(1).  Because Dorman alleges that his claims implicate shares of mutual funds, the requirement that the transactions involve plan assets is satisfied.

   C.   Statutory and class exemptions

Next, Defendants argue that the prohibited transaction claim is barred because it is expressly permitted by various ERISA exemptions which allow an investment management company to offer affiliated funds as part of a 401(k) plan, including PTE 77-3 and ERISA § 408(b)(8).  These exemptions are affirmative defenses on which Defendants bear the burden of proof.  Howard v. Shay, 100 F.3d 1484, 1488-89 (9th Cir. 1996).  Thus, Dorman "need not plead the absence of exemptions to prohibited transactions" and a motion to dismiss may not be granted on this basis unless the defense is obvious from the face of the pleadings.  See Allen v. GreatBanc Tr. Co., 835 F.3d 670, 676 (7th Cir. 2016).

Defendants assert that "PTE 77-3 expressly permits

retirement plans to invest in affiliated funds registered under the Investment Company Act of 1940, provided the plan pays no commissions or other extraneous fees, and the investments are offered on the best available terms." Motion at 22. Defendants assert that all conditions of PTE 77-3 are met; however, they provide no evidence that the Plan pays no commissions or other extraneous fees and that the investments are offered on the best available terms. Second, they contend that ERISA § 408(b)(8) provides an exemption for a transaction between a plan and a collective trust fund. Id. While this is true, several conditions must be met for the statutory exemption to apply, including that the bank receive "not more than reasonable compensation." ERISA § 408(b)(8)(B). Defendants do not provide any evidence that the bank receives "not more than reasonable compensation." The Court cannot accept Defendants' blanket assertion that the § 408(b)(8) conditions are met. Defendants have not satisfied their burden of proving that the statutory exemptions are obvious from the face of the complaint. Thus, these issues are more properly considered on a motion for summary judgment.

III. Duty to monitor claim

Defendants argue that Dorman's duty to monitor claim is not properly pled. "To state a claim for failure to monitor under ERISA, the plaintiff must allege that the defendant failed to review the performance of its appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory

15

standards." Fernandez v. Franklin Res., Inc., No. 17-CV-06409-CW, 2018 WL 1697089, at *7 (N.D. Cal. Apr. 6, 2018) (citation omitted). The FAC alleges that the Board of Director Defendants failed to review and remove EBAC members who committed the alleged breaches of fiduciary duties. FAC ¶¶ 125-129. The duty to monitor claim is essentially derivative of the breach of fiduciary duty claim. Because the breach of fiduciary duty cause of action fails to state a claim, this cause of action does as well.

IV. Defendants other than EBAC

Defendants next contend that the claims against all Defendants other than the EBAC members should be dismissed because only they were fiduciaries with authority to choose Plan investments, which is the conduct targeted by the FAC. Dorman alleges that the Entity Defendants and the Board of Director Defendants are vicariously liable for the EBAC members' actions. He alleges that the Entity Defendants and the Board of Director Defendants delegated responsibilities to the EBAC members, who acted under their direction. Dorman's vicarious liability claim passes muster. Thus, claims against the other entities will not be dismissed.

CONCLUSION

The motion to dismiss is GRANTED with respect to the breach of fiduciary duty claim and the duty to monitor claim (Counts I, III and IV). The Court grants Dorman leave to amend with respect to these claims, except with respect to PCRA. The motion to dismiss is DENIED with respect to the prohibited transaction claim (Count II). The motion to dismiss is also DENIED with

respect to Defendants' argument that claims against all Defendants other than EBAC should be dismissed (Count V).

Any amended complaint shall be filed within twenty-one days.

IT IS SO ORDERED.

Dated: September 20, 2018

CLAUDIA WILKEN
United States District Judge