IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL F. DORMAN, individually as a participant in the SCHWAB PLAN RETIREMENT SAVINGS AND INVESTMENT PLAN and on behalf of a class of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CHARLES SCHWAB CORPORATION; CHARLES SCHWAB & CO INC.; SCHWAB RETIREMENT PLAN SERVICES INC.; CHARLES SCHWAB BANK; CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.; WALTER W. BETTINGER III; CHARLES R. SCHWAB; JOSEPH R. MARTINETTO; MARTHA TUMA; JAY ALLEN; DAVE CALLAHAN; BRADLEY PETERSON; JOHN C. CLARK; KATHY ANDERSON; NAUREEN HASSAN; ED OBUCHOWSKI; DIANE RUSSELL; BRIAN MCDONALD; JONATHAN BEATTY; JOHN DOES 12-50; and XYZ CORPORATIONS 1-5,<br><br>Defendants. | Case No. 17-cv-00285-CW<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS IN PART SECOND AMENDED COMPLAINT<br><br>(Dkt. No. 113) |

Defendants The Charles Schwab Corporation, Charles Schwab & Co. Inc., Schwab Retirement Plan Services Inc., Charles Schwab Bank, Charles Schwab Investment Management, Inc., Schwab Retirement Plan Services, Inc., Charles Schwab Bank, Walter W. Bettinger III, Charles R. Schwab, Joseph Martinetto, Martha Tuma, Jay Allen, Dave Callahan, Bradley Peterson, John C. Clark, Kathy Anderson, Naureen Hassan, Ed Obuchowski, Diane Russell, Brian McDonald, and Jonathan Beatty move to dismiss in part Plaintiff

Michael F. Dorman's Second Amended Complaint (SAC). Defendants also filed a request for judicial notice in support of their motion. Dorman opposes the motion to dismiss but does not oppose the request for judicial notice. Having considered the papers, the Court DENIES in part and GRANTS in part Defendants' motion to dismiss without leave to amend. The Court also GRANTS Defendants' request for judicial notice.

## BACKGROUND

This is an action brought under the Employee Retirement Security Act of 1974 (ERISA) by Dorman on behalf of himself and similarly situated participants in the Plan, an employee pension benefit plan. All eligible employees of Charles Schwab Corporation (CSC) and its affiliates may participate in the Plan. SAC ¶ 32. Participants in the Plan may choose to invest in various Schwab-affiliated and unaffiliated investment options. In his SAC, Dorman has sued three groups of Defendants. The first is the Entity Defendants: CSC; Charles Schwab & Co, Inc. (CS&Co), allegedly the Plan administrator; Charles Schwab Investment Management, Inc. (CSIM), a participating employer in the Plan; Charles Schwab Bank (CSBank), a Schwab subsidiary that allegedly became the Plan's trustee; and Schwab Retirement Plan Services, Inc. (SRPS), a participating employer in the Plan which allegedly provided recordkeeping and related services to the Plan. The second group is the Fiduciary Defendants, which includes the Entity Defendants listed above as well as members of the Plan's Employee Benefits Administration Committee (EBAC), who allegedly chose the investments, paid fees from the Plan's assets, generally administered the Plan and periodically reported

2

to CSC's Board. Individual members named as Fiduciary Defendants are Tuma, Allen, Callahan, Peterson, Clark, Anderson, Hassan, Obuchowski, Russell, McDonald and Beatty. The third group is the Board of Director Defendants, which consists of several individual members of the board of CS&Co. They are Bettinger III, Schwab and Martinetto.

Dorman participated in the Plan from 2009 to 2015. During his participation, Dorman invested in both affiliated and unaffiliated options. SAC ¶ 43.

Dorman's First Amended Complaint (FAC) alleged five counts: (I) that the Fiduciary Defendants breached their ERISA §§ 404(a)(1)(A) and (B) duties of loyalty and prudence by including certain funds without investigating cheaper, better performing alternatives; (II) that the Fiduciary Defendants violated ERISA § 406(a), which proscribes ERISA fiduciaries from causing ERISA plans to engage in certain enumerated prohibited transactions with parties in interest; (III) that the Board of Director Defendants violated their duties of prudence and loyalty under ERISA § 404(a)(1)(A) and (B); (IV) that the Fiduciary Defendants are liable under ERISA § 405 for the misconduct of other fiduciaries; and, (V) that he is entitled to equitable relief under ERISA § 502(a)(3) against the Entity Defendants who knowingly participated and received the benefits of the fiduciary breaches and transactions above.

On September 20, 2018, the Court granted in part and denied in part Defendants' first motion to dismiss, addressing Dorman's FAC. Docket No. 104 (Order). The Court granted leave to amend counts I, III and IV, except as to the self-directed brokerage

3

fund, which the Court dismissed without leave to amend. The Court denied Defendants' motion to dismiss counts II and V. Dorman subsequently filed his SAC alleging the same five counts. Defendants now move to dismiss counts I, III and IV. Dorman's SAC includes new allegations to support his breach of fiduciary duty claim (count I); he argues that his failure to monitor claim (count III) and breach of co-fiduciary duty claim (count IV) survive to the extent count I now survives.

Dorman's SAC alleges three main actions which he argues were breaches of Fiduciary Defendants' fiduciary duties. The first is EBAC's process in selecting affiliated capital preservation options to replace the Schwab Stable Value Fund (SVF). Schwab's SVF was terminated in 2012. SAC ¶ 70. EBAC delegated the task of selecting alternative funds to its independent consultant, Mercer LLC (Mercer), because EBAC was conflicted. EBAC then chose a blend of affiliated and unaffiliated funds. Seventy percent of the Plan's Schwab SVF investment was transferred to the JPMorgan Short Duration Bond Fund and PIMCO Low Duration Fund, which were unaffiliated funds. Id., ¶ 79. Thirty percent was transferred to the Schwab Value Advantage Money Market Fund (Schwab Money Market Fund), an affiliated fund.[1] Dorman alleges that, after two years, the funds from JPMorgan Short Duration Bond, PIMCO Low Duration and Schwab Money Market Fund were all transferred to the Schwab Bank Savings Cash Account (Schwab Savings Account). Id., ¶¶ 79-80. He further alleges that EBAC

---

[1] This decision to allocate seventy percent of the Schwab SVF investment to unaffiliated funds and thirty percent to Schwab's Money Market Fund will hereinafter be referred to as the "Seventy/Thirty Plan."

4

ignored a recommendation from Mercer, and that the Seventy/Thirty Plan was only an interim plan, which resulted in losses to Plan participants while EBAC tried to devise a plan to transfer these funds back into a Schwab fund that would fit into a prohibited transaction exemption.

The second action Dorman alleges as breaches of Fiduciary Defendants' fiduciary duties relates to EBAC's decision to continue investing in certain affiliated funds, specifically the Schwab International Index Fund, Schwab Small-Cap Index Fund, Schwab's Managed Retirement Trust Funds (SMRT Funds), which comprise a family of ten target date funds, and Schwab Money Market Fund, along with selecting the Schwab Savings Account. Dorman alleges all these affiliated funds and Schwab Savings Account persistently and materially underperformed and charged excessive management fees. Id., ¶¶ 60-68, 87.

The third action pertains to unallocated cash from the Plan, which consisted of new contributions, other assets awaiting investment pending distributions, and rollovers. Dorman alleges the unallocated cash was loaned to CSC's affiliated entity CSBank without enough limitations. Specifically, Fiduciary Defendants allegedly loaned CSBank the money without requiring interest on the loan, violating § 406(a). Id., ¶¶ 101-03.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Twombly, 550 U.S. at 555. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice. Id. at 1061. However, the court need not accept legal conclusions, including threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

DISCUSSION

I. Defendants' Request for Judicial Notice

As a preliminary matter, Defendants request the Court take judicial notice of seventeen documents. Docket No. 115 (Request for Judicial Notice). The first thirteen are documents consisting of the Plan's summary plan description, the Plan's 2016 Form 5500, various notices to plan participants regarding the Plan's investment options and a prospectus filed with the Securities Exchange Commission. See Request for Judicial Notice

6

at 3-5. Defendants had requested the Court take judicial notice of these documents in support of their first motion to dismiss. Dorman did not oppose Defendants' request then nor does he now. The Court finds they are judicially noticeable.

The other four documents are excerpted reports from Mercer to EBAC specifying how various funds in the Plan performed. Dorman does not oppose Defendants' request. These four reports contain figures which Dorman has relied upon although he did not cite them in his SAC. These four reports are judicially noticeable for purposes of a Rule 12(b)(6) motion because the documents are incorporated by reference into Dorman's SAC. See Hoey v. Sony Elecs. Inc., 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007) (granting party's request for judicial notice because "[e]ven if a document is not attached to a complaint, it may be incorporated . . . if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim") (internal citations omitted).

II. Breach of Fiduciary Duty Claim (Count I)

Defendants move to dismiss count I, Dorman's ERISA claim against the Fiduciary Defendants for breach of the fiduciary duties of prudence and loyalty. "An ERISA fiduciary must discharge his responsibility with the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use." Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828 (2015). The duty of loyalty requires an ERISA fiduciary to act "solely in the interest of the participants and beneficiaries." White v. Chevron Corp., 16-cv-0793-PJH, 2016 WL 4502808, at *1 (N.D. Cal. Aug. 29, 2016) (White

I) (quoting § 404(a)(1)(A)). Dorman has amended his complaint to add facts to support three arguments, along with a catch-all argument, as to how Fiduciary Defendants have breached their fiduciary duties of loyalty and prudence. He argues that the SAC now sufficiently alleges: (i) facts showing that EBAC's process in replacing the Schwab SVF was deficient and that EBAC failed to follow its own procedure and/or disregarded its independent consultant's recommendation; (ii) facts showing that the affiliated funds purportedly persistently and/or materially underperformed; (iii) that because Dorman was found to have sufficiently alleged a claim of prohibited transactions, he therefore also sufficiently alleges a breach of fiduciary duty claim as to the earnings from the unallocated cash; and, (iv) lastly, as a catch-all, that viewing all of the allegations together creates an inference of imprudence and disloyalty by Defendants.

### A. EBAC's Process of Selecting Alternative Funds to Replace the Terminated Schwab SVF

The Court dismissed Dorman's breach of fiduciary duty claim (count I) as to the terminated SVF alternatives because Dorman had conceded that seventy-percent of the SVF was transferred to unaffiliated funds, making a claim of improper self-dealing "implausible," and because Defendants were not, per se, required to include a stable value fund in their Plan. Order at 9. Dorman now alleges facts challenging EBAC's process in selecting SVF replacements. Specifically, Dorman asserts that EBAC had a deficient selection process because he has alleged the following facts: (i) the Seventy/Thirty Plan was a result of EBAC's

8

purported original failed plan to transfer all the funds from Schwab's SVF to an affiliated fund; (ii) the Seventy/Thirty Plan was an interim move as part of Defendants' prohibited transaction exemption strategy; (iii) EBAC had already determined a stable value fund was the most appropriate capital preservation option; (iv) a majority of plans, as identified by Dorman, that previously held the Schwab SVF had replaced it with another stable value fund; and, (v) the unaffiliated funds were not comparable alternatives to the SVF.

Dorman has pleaded sufficient facts to give rise to an inference of a breach of fiduciary duty. Dorman argues that a deficient process can be inferred based on EBAC meeting minutes produced in discovery. Specifically, Dorman's SAC alleges that EBAC meeting minutes show it had delegated its role in selecting a Schwab SVF replacement to an independent consultant, Mercer, because EBAC had a conflict, and Mercer was to prepare a recommendation as to how EBAC should proceed in replacing the terminated SVF. However, because no such report was produced in discovery, SAC ¶¶ 80-82, despite the production of other EBAC minutes and Mercer reports, and because Defendants maintain that all non-privileged and responsive EBAC documents have been produced, id., ¶ 82-83, Dorman argues the Court should infer that no such report exists or that EBAC ignored the recommendation from Mercer, id. Defendants maintain that this Mercer report was not produced because it was outside the scope of claims Dorman could bring in arbitration in that he never invested in the Schwab SVF or Schwab Money Market Fund. The Court does not find this persuasive because Defendants, as they themselves claimed,

have produced "thousands of pages" of discovery, including other EBAC meeting minutes and Mercer reports containing financial information about Schwab's SVF and Money Market Fund. See Declaration of Tulio D. Chirinos (Chirinos Decl.), Ex. 14 at 15, Ex. 15 at 24, Ex. 16 at 21, Ex. 17 at 23, 27. The Court finds that, viewing the allegations in the light most favorable to Dorman, the absence of such a Mercer report or EBAC meeting minutes showing Mercer's recommendation gives rise to an inference that EBAC either never received or disregarded Mercer's recommendation. This sufficiently alleges that Fiduciary Defendants breached their fiduciary duties because EBAC failed to follow its own process to prudently and loyally investigate options before selecting alternatives for Schwab's SVF. Order at 7 (noting that Dorman needed to allege facts to show how "the process by which [Fiduciary Defendants] managed the Plan was flawed").

However, Dorman's other allegations as to a deficient process fail. To the extent Dorman argues again that replacing Schwab's SVF with another stable value fund, as opposed to the Schwab Money Market Fund, would have been the prudent action, see SAC ¶ 97, Table 3 (showing a majority of thirty-eight plans replaced the Schwab SVF with another stable value fund), this fails as it did the first time because "Defendants are not required to provide a stable value fund." Id. at 9 (citing White v. Chevron Corp., 16-cv-0793-PJH, 2017 WL 2352137, at *11 (N.D. Cal. May 31, 2017) (White II)).

Dorman also argues that EBAC's process was deficient because it ignored years of data showing the SMRT Funds were

10

underperforming.[2]  However, SMRT Funds were not part of the SVF replacement funds.  Moreover, assuming this was to show EBAC's deficient selection process separate from the SVF replacements, this still fails.  The only factual allegations to support this conclusion was the purported underperformance of the SMRT Funds themselves.  Dorman cannot use the funds' purported underperformance as factual support of a deficient process when the funds' underperformance, as discussed later, is insufficient to infer imprudence and must be supported by facts alleging a deficient process.  Dorman cannot use each conclusory statement to bolster the other.

Dorman lastly argues that EBAC's process was deficient because transferring the SVF to the unaffiliated replacements did not guarantee against a loss and the unaffiliated funds were not a comparable replacement as capital preservation options.  However, Dorman has pleaded no facts to support this conclusory allegation.

While Dorman's other allegations as to EBAC's deficient process fail, because the lack of any Mercer report or EBAC minutes stating the independent consultant Mercer's recommendation does give rise to an inference of imprudence and disloyalty in EBAC's process, the Court DENIES Defendants' motion to dismiss count I to the extent it relies on this theory.

---

[2] The analysis of allegedly underperforming SMRT Funds is separate from the analysis of the alleged underperformance of the affiliated capital preservation options, Schwab Money Market Fund and Schwab Savings Account.  As discussed below, Dorman's allegations as to the capital preservation options, viewed with allegations of EBAC's deficient process as to selecting the SVF replacements, sufficiently raises an inference of imprudence and disloyalty.

11

B.  Schwab's Affiliated Funds and Options

In the SAC, Dorman adds new allegations relating to Schwab-affiliated funds in support of his breach of fiduciary duty claim (count I). He alleges that the selection and retention of the Schwab International Index Fund, Schwab Small-Cap Index Fund and SMRT Funds, along with the Schwab Money Market Fund and Schwab Savings Account, were breaches of fiduciary duties by the Fiduciary Defendants because these funds generated excessive management fees while underperforming.

1. Excessive Management Fees of the Schwab International Index Fund, Schwab Small-Cap Index Fund and SMRT Funds

The Court rejected Dorman's argument that Schwab's affiliated funds charged excessive fees on the last motion to dismiss, finding that "Schwab funds appear to have charged only slightly higher fees and underperformed by only a modest amount" and citing Schwab's S&P 500 Index Fund fees as an example. Order at 6. The Court further held that these modest differences are insufficient because a fiduciary may consider other relevant factors and not just fees when selecting certain funds. Id. at 7. Dorman alleges no new facts as to excessive management fees for the Schwab International Index Fund, Schwab Small-Cap Index Fund and SMRT Funds, but argues that this is sufficient to survive Defendants' motion to dismiss because the fees charged by the SMRT Funds were three times higher than comparable Vanguard funds, because he omitted Schwab's S&P 500 Index Fund from his SAC and because it is Defendants' burden to identify the other relevant factors that were available when considering selection of these funds. First, Dorman's excessive management fees theory

12

fails because he has alleged no new facts to address the deficiencies identified by the Court and merely recharacterizes them. For example, he has not alleged certain fees that would be outside the range of "modest differences." See Order at 6-7 (noting acceptable expense ratios can range from .03% to 2% or .07% to 1%). Here, the expense ratio range is purported to be .07% to .93%. Chirinos Decl., Ex. 3 at 2-7; Ex. 12 at 2-7.

Further, Dorman misconstrues the Court's Order. The Court cited Schwab's S&P 500 Index Fund fees as an example of a fund charging slightly higher fees. The Court's reasoning that slightly higher fees of the S&P 500 Index Fund alone were insufficient to state a cognizable breach of fiduciary duty claim extends to all management fees alleged to be excessive by Dorman here. Merely deleting the S&P 500 Index Fund allegations does not cure the deficiency. Moreover, the burden is not on Defendants to identify other relevant factors; rather, the Court's Order stated that modest differences in fees do not give rise to a breach of fiduciary duty as to the excessive fees allegations because fiduciaries may take other factors into consideration. Plaintiffs must generally plead facts showing more than just high fees to show that defendants were imprudent in selecting certain funds.

> 2. EBAC's Decision to Include Underperforming Schwab International Index Fund, Schwab Small-Cap Index Fund and SMRT Funds

The Court rejected Dorman's theory in count I that Fiduciary Defendants breached their fiduciary duties based on the affiliated funds' underperformance, finding, "Standing alone, offering and retaining funds that have underperformed modestly

13

and have somewhat higher fees is not enough to show malfeasance."
Order at 6; see also White II, 2017 WL 2352137, at * 20
(rejecting plaintiff's allegation that defendants' failure to
remove a fund due to its "consistent underperformance" was
insufficient because "poor performance, standing alone, is not
sufficient to create a reasonable inference that plan fiduciaries
failed to conduct an adequate investigation . . . . ERISA
requires a plaintiff to plead some other indicia of imprudence").
Dorman offers new allegations, which he argues cure the
deficiencies identified by the Court because these allegations
now show "material" and "persistent" underperformance. These new
allegations do not remedy the previous deficiencies. First,
Dorman has provided no new allegations of "other indicia of
imprudence." At most, construed in the light most favorable to
Dorman, his new allegation that Defendants failed to pursue a
"meaningful investigation, or ignored recommendations of advisors
or consultants," SAC ¶ 55, would be "other indicia" of
malfeasance as to the SMRT Funds,[3] but is conclusory and
unsupported by any factual allegations. Thus, Dorman has not
provided factual allegations of "other indicia" and his new
allegations pertain only to underperforming funds, which alone,
as the Court has said, are insufficient to survive a motion to
dismiss and fail for that reason.

---

[3] Dorman does not provide any new allegations of underperformance by the other challenged affiliated funds, Schwab International Index Fund or Schwab Small-Cap Index Fund. His only new allegations of underperformance relate to the SMRT Funds and Money Market Fund. Thus, Dorman's allegations of underperformance as to the former funds independently fail because he has failed to offer new allegations to cure the deficiencies identified by the Court.

14

Separately, the allegations here do not, as Dorman argues, indicate the SMRT Funds "persistent[ly]" or "materially" underperformed. Dorman now alleges that some of Schwab's SMRT Funds underperformed, measured on a five-year basis using the Schwab Managed Retirement Trust Index (Index) and the Mercer Mutual Fund Lifecycle Universe Median (Universe Median) as benchmarks. As compared to these benchmarks, Dorman's SAC shows that Schwab's family of ten SMRT Funds both underperformed and outperformed or matched at various times, ranging from zero out of ten funds underperforming in one year up to six out of ten funds underperforming in another year. See SAC ¶¶ 62-66. This contradicts Dorman's own allegations that SMRT Funds "persistent[ly]" underperformed. For example, in 2013, all ten SMRT Funds outperformed or matched the Index benchmark in the previous five years, and eight out of the ten funds outperformed or matched the Universe Median in the previous five years. See Chirinos Decl., Ex. 17 at 22; compare with Terraza v. Safeway, Inc., 241 F. Supp. 3d 1057, 1071 (N.D. Cal. 2017) (finding plaintiff's allegations, inter alia, that "during the pertinent period, almost all of the investment options . . . underperformed compared to their benchmark" was sufficient to create a plausible inference that defendants' decision-making process was flawed). Moreover, Dorman alleges persistent underperformance, citing Mercer reports showing consistent quarters of underperformance of SMRT Funds, including periods as long as thirteen, seventeen or twenty-one quarters. However, converted into years, this translates into three to five years, which are still considered relatively short periods of underperformance. See Jenkins v.

15

1  Yager, 444 F.3d 916, 925-26 (7th Cir. 2006) (finding defendant did not breach his fiduciary duties retaining funds that underperformed for three years because "investment strategy . . . to find long-term, conservative, reliable investments that would do well during market fluctuations" for long-term investment was not unreasonable or imprudent); Order at 7.

### 3. Excessive Management Fees and Underperformance of the Schwab Money Market Fund and Schwab Savings Account

As to the Schwab Money Market Fund's and Schwab Savings Account's management fees and underperformance allegations, because Dorman has sufficiently alleged facts supporting a claim of breach of fiduciary duty under the theory of a deficient process selecting the SVF replacements (i.e., the Money Market Fund and Schwab Savings Account), the allegations of excessive management fees and underperformance as to the Fund and Account also survive as Dorman has alleged "some other indicia of imprudence." See e.g., White II, 2017 WL 2352137, at *20.

For the foregoing reasons, apart from the Schwab Money Market Fund and Schwab Savings Account, none of Dorman's new allegations as to his affiliated funds theory sufficiently alleges facts to infer a breach of Fiduciary Defendants' fiduciary duties (count I).

C. Earnings from Unallocated Cash

Dorman argues that Fiduciary Defendants were imprudent and disloyal because they gave CSBank an interest-free loan using extraneous unallocated cash from the Plan in violation of 29 C.F.R. § 2550.408b-2(e). Dorman has alleged these new facts to

16

flesh out his prohibited transaction claim and appears to argue that this also sufficiently alleges Defendants breached their fiduciary duties because these allegations show a prohibited transaction.[4] Regulation § 2550.408b-2 is an explicit exemption from the prohibitions in § 406(a) (i.e., prohibited transactions) promulgated pursuant to § 408(b)(2) under ERISA. 29 C.F.R. § 2550.408b-2(a). The regulation states, "Section 408(b)(2) of the Act does not contain an exemption from other provisions of the Act, such as § 404 [i.e., the statutes pertaining to the fiduciary duties of prudence and loyalty] . . . which may impose requirements or restrictions relating to the transactions which are exempt under section 408(b)(2)." Id., subd. (a)(3) (emphasis added). Thus, while a transaction may be exempt under § 408(b)(2), it could nevertheless still be subject to the fiduciary duties of prudence and loyalty. However, aside from conclusory allegations that Defendants failed to make meaningful investigations, see SAC ¶¶ 104-05, Dorman has not identified any facts nor regulations under § 404 showing how Defendants here violated their duties of prudence or loyalty as to the unallocated earnings. Instead, Dorman argues because the loan is allegedly a prohibited transaction, it should also be a per se violation of Defendants' fiduciary duties of prudence and loyalty. This is insufficient to state a claim of a breach of fiduciary duty.

---

[4] Since Dorman has added new allegations to support his prohibited transaction claim, a claim which the Court had previously allowed to proceed, and Defendants do not oppose these amendments to the extent they support the prohibited transaction claim, the Court will allow the amendments as to count II.

17

D.  Viewing All Allegations in Their Totality

Aside from Dorman's allegedly deficient process inferred from the lack of any Mercer report or meeting minutes and the excessive fees and underperformance of the SVF replacements, all of the other theories fail for the reasons identified above; thus, viewing these all together also does not sufficiently state a breach of fiduciary duty claim.

However, the Court finds that Dorman has sufficiently alleged facts giving rise to an inference of imprudence and disloyalty as to his theory of Defendants' deficient process in selecting the Schwab SVF replacements based on the lack of a report or meeting minutes, along with the allegations of excessive fees and underperformance of these SVF replacements. Thus, to the extent Dorman's breach of fiduciary duty claim relies on these theories, the Court DENIES Defendants' motion to dismiss count I. However, because Dorman has failed to cure the deficiencies as to his other theories despite an opportunity to do so, the Court GRANTS Defendants' motion to dismiss count I as to the other theories without leave to amend.

III. Dorman's Derivative Claims (Counts III & IV)

Dorman also alleges that the Board of Director Defendants failed to monitor the Fiduciary Defendants (count III). "The Ninth Circuit has recognized that where members of an employer's board of directors have responsibility for the appointment and removal of ERISA trustees, those directors are themselves subject to ERISA fiduciary duties, albeit only with respect to trustee selection and retention." Solis v. Webb, 931 F. Supp. 2d 936, 952-53 (N.D. Cal. 2012) (internal citations omitted).  Here,

Dorman has sufficiently alleged a duty to monitor claim, alleging that Board of Director Defendants had authority to appoint individuals to EBAC, failed to investigate and monitor whether Fiduciary Defendants (which includes EBAC members) were fulfilling their fiduciary roles and failed to act to correct any imprudent and disloyal actions. See SAC ¶¶ 150-51; see also Fernandez v. Franklin Resources, Inc., 17-cv-6409, 2018 WL 1697089, at *7 (N.D. Cal. Apr. 6, 2018). The basis for this claim would be failing to act to correct EBAC's allegedly deficient process in selecting the SVF replacement.

Further, Dorman's breach of co-fiduciary duty claim (count IV) against the Fiduciary Defendants also survives because Dorman has sufficiently alleged that Fiduciary Defendants had knowledge of the alleged imprudent or disloyal acts that this Court found sufficiently state a claim for Dorman's breach of fiduciary duty claim (count I). See Woods v. Southern Co., 396 F. Supp. 2d 1351, 1379 (N.D. Ga. 2005) (finding allegation that co-fiduciaries had "knowledge" of purported wrongdoing sufficiently stated a claim and citing cases stating the same).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss in part Dorman's SAC is GRANTED in part without leave to amend and DENIED in part. Defendants' motion is denied to the extent that counts I, III & IV are based on the theories of a deficient process in selecting a replacement for the SVF and of excessive fees and underperformance of such SVF replacements. The motion is otherwise granted without leave to amend. A further case management conference is set for March 12, 2019 at 2:30 p.m., a

19

joint case management statement is due a week before on March 5, 2019.

IT IS SO ORDERED.

Dated: February 8, 2019

CLAUDIA WILKEN
United States District Judge